# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| DAMONTA JENNINGS,<br><br>                       Plaintiff,<br><br>v.<br><br>CHARLES DOMBECK, LAURA SUKOWATY, ROBERT WEINMAN, MARY MOORE, BETHANY SOUTH, ASHLEY HASELEU, and DANIEL LAVOIE,<br><br>                       Defendants. | Case No. 22-CV-1205-JPS<br><br>**ORDER** |

      Plaintiff Damonta Jennings, an inmate confined at Waupun Correctional Institution ("WCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that his Eighth Amendment rights were violated when he was not provided adequate medical treatment. ECF No. 1. On April 4, 2023, the Court screened the complaint, found that it failed to state a claim, and granted Plaintiff leave to file an amended complaint. ECF No. 10. Plaintiff filed a motion for an extension of time to amend the complaint, ECF No. 14, and filed an amended complaint on July 28, 2023. ECF No. 15. On August 28, 2023, the Court screened the amended complaint and allowed the case to proceed against Defendants Moore, South, Dombeck, Weinman, Haseleu, LaVoie, and Sukowaty. ECF No. 16 at 7.

      On January 25, 2024, the Court entered a scheduling order that allowed amended pleadings to be filed on or before February 15, 2024. ECF No. 29. Plaintiff filed a second amended complaint on February 14, 2024. ECF No. 30. On March 12, 2024, Defendants filed a motion to screen the

second amended complaint and set a deadline to answer. ECF No. 35. This Order screens Plaintiff's second amended complaint.

1.  **FEDERAL SCREENING STANDARD**

Under the Prison Litigation Reform Act, the Court must screen complaints brought by prisoners seeking relief from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint if the prisoner raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

In determining whether the complaint states a claim, the Court applies the same standard that applies to dismissals under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017) (citing *Booker-El v. Superintendent, Ind. State Prison*, 668 F.3d 896, 899 (7th Cir. 2012)). A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States and that whoever deprived him of this right was acting under the color of state law. *D.S. v. E. Porter Cnty. Sch. Corp.*, 799 F.3d 793, 798 (7th Cir. 2015) (citing *Buchanan–Moore v. County of Milwaukee*,

570 F.3d 824, 827 (7th Cir. 2009)). The Court construes pro se complaints liberally and holds them to a less stringent standard than pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

## 2. PLAINTIFF'S ALLEGATIONS

Plaintiff's allegations stem from his lack of medical treatment at WCI. He names the following defendants: Mary Moore ("Moore"), Bethany South ("South"), Charles Dombeck ("Dombeck"), Robert Weinman ("Weinman"), Ashley Haseleu ("Haseleu"), Daniel LaVoie ("LaVoie"), and Laura Sukowaty ("Sukowaty"). ECF No. 30 at 1. On March 1, 2021, Plaintiff sent a health service request ("HSR") to be seen due to blurry vision. *Id.* at 5. On March 11, 2021, Plaintiff saw South, an optometrist, for a basic eye exam. *Id.* South believed that Plaintiff had a condition called corneal ectasia, or keratoconus, which is a rare eye disease that leads to thinning and protrusion of the front cornea and decreased vision. *Id.* Plaintiff requested a comprehensive exam and South referred Plaintiff to UW for a topography exam and possibly seleral contact lenses as an alternative to glasses. *Id.* at 5–6.

On March 12, 2021 and March 15 2021, Plaintiff submitted HSRs complaining of eye pain, blurry vison, and that he believed his keratoconus was progressing at a rapid rate. *Id.* at 6. HSU told Plaintiff that a referral for ophthalmology was being arranged and he saw RN Larsen on March 15, 2021. *Id.* Larsen suggested that Plaintiff order some over-the-counter medication for his headaches, suggested sunglasses for his time outside, and suggested that Plaintiff not stare at the television. *Id.* Larsen did not provide anything further for his eye and headache pain. *Id.*

On June 2, 2021, approximately three months after his initial diagnosis, Plaintiff was sent to the University of Wisconsin Department of Ophthalmology to see a specialist. *Id.* at 6–7. Dr. Shilpa G. Reddy confirmed Plaintiff had keratoconus and recommended that Plaintiff wear glasses and return for more exams. *Id.* at 7. South did not place an order for Plaintiff's glasses until August 3, 2021, despite the specialist's recommendations. *Id.*

On September 22, 2021, Plaintiff returned to UW Ophthalmology to see Dr. Reddy for additional exams. *Id.* at 7–8. Based on the severity of Plaintiff's keratoconus, Dr. Reddy recommended a corneal crosslinking procedure as the most desirable plan of action. *Id.* at 8. Due to the severity of Plaintiff's condition, Dr. Reddy dismissed the treatment option of contact lenses. *Id.* Given this dismissal, South's efforts for Plaintiff to receive contact lenses was inefficient and inappropriate. *Id.* Plaintiff needed prior authorization for approval of his treatment; South, Dombeck, Moore, Haseleu, Weinman and Lavoie all could have approved the treatment but failed to do so. *Id.* at 9. Instead, South and Moore sent Plaintiff to see a UW-Cornea specialist who could do nothing to treat Plaintiff's progressive conditions. *Id.* Moore disregarded the recommendation for corneal crosslinking, a treatment that could have stopped the condition from progressing towards vision loss. *Id.* Plaintiff believes that Defendants' deliberate indifference caused his keratoconus and vison issues to become more severe. *Id.*

On April 3, 2022, Plaintiff wrote to HSU about Dr. Reddy's recommendation for corneal crosslinking surgery. *Id.* Defendant Dombeck responded on April 6, 2022, stating, "I see this in records message sent to Medical Director Laura Sukowaty, will enter order if no prior authorization needed." *Id.* at 14. On April 7, 2022, Sukowaty responded to Dombeck, "I

have discussed this with Daniel LaVoie in the past (Jennings) can be approved for corneal crosslinking." *Id.* There is no documentation of prior authorization and Defendants knew of the recommendations and had conversations amongst themselves instead of following proper procedure. *Id.* at 15.

On April 28, 2022, Bassuener scheduled Plaintiff for a consult and procedure at Valley Eye for November. *Id.* Plaintiff believes that Defendants could have intervened and requested an earlier appointment due to the severity of Plaintiff's condition and the need to possibly prevent a corneal transplant. *Id.* On May 2, 2022, Plaintiff wrote to HSU that he felt he was being denied adequate medical care pertaining to his keratoconus and that nothing was being done in a timely manner. *Id.* at 16. On May 9, 2022, South cancelled Plaintiff's appointment with Valley Eye and wrote on the record that it was not covered by the DOC. *Id.*

On May 10, 2022, Plaintiff saw South for a vision check. *Id.* at 17. South told him his procedure had been cancelled because it was not a covered procedure. *Id.* On May 12, 2022, Plaintiff filed an inmate complaint about the denial of his medical treatment. *Id.* He was sent to UW-Ophthalmology the same day to be fitted for contact lenses. *Id.*

On May 16, 2022, Plaintiff's consult and procedure was reordered. *Id.* On June 16, 2022, Plaintiff received his contact lenses. *Id.* at 18. On July 6, 2022, Plaintiff was sent to Valley Eye to consult with a cornea specialist and surgeon. *Id.* Dr. Vrabec diagnosed Plaintiff with severe unstable keratoconus. *Id.* He said that contacts may help with Plaintiff's vision but would do nothing to stop the progression of the keratoconus. *Id.* WCI received this assessment and plan for Plaintiff's treatment. *Id.* Plaintiff filed an inmate complaint about his treatment on August 28, 2022, and the

complaint was affirmed. *Id.* On October 14, 2022, approximately one year after Dr. Reddy's initial recommendation, Plaintiff was sent to Valley Eye for the corneal crosslinking procedure. *Id.* at 19. On December 11, 2022, Plaintiff was sent to UW-Ophthalmology to consult with a specialist who determined that Plaintiff's keratoconus in the left eye had progressed to an advanced stage and recommended corneal transplant surgery. *Id.* On December 13, 2022, prior authorization was entered for Plaintiff to receive the surgery.

3. **ANALYSIS**

First, the Court will allow Plaintiff to proceed on an Eighth Amendment claim against Defendants Moore, South, Dombeck, Weinman, Haseleu, LaVoie, and Sukowaty. The Eighth Amendment secures an inmate's right to medical care. Prison officials violate this right when they "display deliberate indifference to serious medical needs of prisoners." *Greeno v. Daley*, 414 F.3d 645, 652 (7th Cir. 2005) (internal quotation omitted). Deliberate indifference claims contain both an objective and a subjective component: the inmate "must first establish that his medical condition is objectively, 'sufficiently serious,'; and second, that prison officials acted with a 'sufficiently culpable state of mind,' i.e., that they both knew of and disregarded an excessive risk to inmate health." *Lewis v. McLean*, 864 F.3d 556, 562–63 (7th Cir. 2017) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal citations omitted)).

"A delay in treating non-life-threatening but painful conditions may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)). The length of delay that is tolerable "'depends on the seriousness of

Page 6 of 11
Case 2:22-cv-01205-JPS   Filed 04/02/24   Page 6 of 11   Document 39

the condition and the ease of providing treatment.'" *Id.* (quoting *McGowan*, 612 F.3d at 640).

Here, Plaintiff may proceed on an Eighth Amendment claim against Defendants Moore, South, Dombeck, Weinman, Haseleu, LaVoie, and Sukowaty for their deliberate indifference to Plaintiff's serious medical need. Plaintiff alleges that these defendants had knowledge of his serious eye condition and failed to timely treat him, resulting in the progression of his keratoconus. As the pleading stage, the Court finds these allegations sufficient to proceed on an Eighth Amendment claim against Defendants.

Second, the Court will exercise supplemental jurisdiction at this early stage under 28 U.S.C. § 1367(a) over Plaintiff's state law claims for medical malpractice and negligent supervision. Wisconsin law defines medical negligence as the failure of a medical professional to "exercise that degree of care and skill which is exercised by the average practitioner in the class to which he belongs, acting in the same or similar circumstances." *Sawyer v. Midelfort,* 595 N.W.2d 423, 435 (Wis. 1999); *Schuster v. Altenberg,* 424 N.W.2d 159, 161–62 (Wis. 1988). Plaintiff contends that Moore and South deviated from the standard of care by refusing to follow the ophthalmologist's recommendation and failing to provide appropriate and timely eye care. Like all claims for negligence, a claim for medical malpractice includes the following four elements: (1) a breach of (2) a duty owed (3) that results in (4) harm to the plaintiff. *Paul v. Skemp,* 2001 WI 42 ¶ 17. At the pleading stage, the Court will allow Plaintiff to proceed against Moore and South for medical malpractice.

Third, the Court will allow Plaintiff to proceed on a state law negligent supervision claim against Weinman and Haseleu. Negligent supervision is an actionable tort in Wisconsin where "the failure of the

employer to exercise due care was a cause-in-fact of the wrongful act of the employee that in turn caused the plaintiff's injury." *Miller v. Wal-Mart Stores, Inc.*, 580 N.W.2d 233, 238 (Wis. 1998). The few Wisconsin courts to consider the issue appear to find negligent supervision distinct from general negligence, and therefore not duplicative. *See Hansen v. Texas Roadhouse, Inc.*, 827 N.W.2d 99, 108 (Wis. Ct. App. 2012) (treating the two causes of action as distinct and holding that a jury's affirmance of punitive damages in a negligent supervision action did not imply a cause of action for general negligence, which was never submitted to the jury); *see also John Doe 1 v. Archdiocese of Milwaukee*, 734 N.W.2d 827, 837–38 (Wis. 2007) (holding that, for statute of limitations purposes, negligent supervision is a derivative claim arising from general negligence, but not foreclosing both). At the pleading stage, the Court will allow Plaintiff to proceed against Weinman and Haseleu for negligent supervision.

### 4. CONCLUSION

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915A(b):

**Claim One:** Eighth Amendment claim against Moore, South, Dombeck, Weinman, Haseleu, LaVoie, and Sukowaty for their deliberate indifference to Plaintiff's serious medical need.

**Claim Two:** State law medical malpractice claim against Moore and South.

**Claim Three:** State law negligent supervision claim against Weinman and Haseleu.

There are no new defendants added to the case and the Court therefore does not find that the addition of these state law claims necessarily warrants a change to the Court's scheduling order. However,

Page 8 of 11
Case 2:22-cv-01205-JPS   Filed 04/02/24   Page 8 of 11   Document 39

the parties may later submit a motion to extend time, with a thorough explanation, if needed at a date closer to the discovery and summary judgment deadlines.

Accordingly,

**IT IS ORDERED** that Defendants' motion to screen and set answer deadline, ECF No. 35, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that pursuant to Defendants' request, *see* ECF No. 35, Defendants shall file a responsive pleading to the second amended complaint, ECF No. 30, within thirty (30) days;

**IT IS FURTHER ORDERED** that Defendants raise any exhaustion-related challenges to the new claims by filing a motion for summary judgment within forty-five (45) days of this Order; and

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the second amended complaint, and Plaintiff should strongly consider filing a third amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss,

Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice.

Dated at Milwaukee, Wisconsin, this 2nd day of April, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

> Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.