# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

DAMONTA JENNINGS,

                Plaintiff,

v.

CHARLES DOMBECK, LAURA SUKOWATY, ROBERT WEINMAN, MARY MOORE, BETHANY SOUTH, ASHLEY HASELEU, and DANIEL LAVOIE,

                Defendants.

Case No. 22-CV-1205-JPS

**ORDER**

      Plaintiff Damonta Jennings, an inmate confined at Waupun Correctional Institution ("WCI"), filed a pro se complaint under 42 U.S.C. § 1983 alleging that his Eighth Amendment rights were violated when he was not provided adequate medical treatment. ECF No. 1. On April 4, 2023, the Court screened the complaint, found that it failed to state a claim, and granted Plaintiff leave to file an amended complaint. ECF No. 10. Plaintiff filed a motion for an extension of time to amend the complaint, ECF No. 14, and filed an amended complaint on July 28, 2023. ECF No. 15. On August 28, 2023, the Court screened the amended complaint and allowed the case to proceed. ECF No. 16 at 7.

      On January 25, 2024, the Court entered a scheduling order that allowed amended pleadings to be filed on or before February 15, 2024. ECF No. 29. Plaintiff filed a second amended complaint on February 14, 2024. ECF No. 30. On March 25, 2024, Plaintiff filed a motion to appoint counsel. ECF No. 36. On April 2, 2024, the Court screened the second amended

complaint. ECF No. 39. On April 8, 2024, Plaintiff filed a motion to order parties to participate in early neutral evaluation. ECF No. 40

First, for the reasons explained below, the Court will grant Plaintiff's motion to appoint counsel. As a civil litigant, Plaintiff has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). However, under 28 U.S.C. § 1915(e)(1), a "court may request an attorney to represent any person unable to afford counsel." A court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether to appoint counsel in a particular case is left to a court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

While framed in terms of a plaintiff's capacity to litigate, this discretion must also be informed by the realities of recruiting counsel in this District. When a court recruits a lawyer to represent a pro se party, the lawyer takes the case pro bono. Unlike a lawyer appointed to represent a criminal defendant during his prosecution, who is paid by the government for his work, an attorney who takes a prisoner's civil case pro bono has no promise of compensation.

It is difficult to convince local lawyers to take such cases. Unlike other districts in this Circuit, *see, e.g.*, L.R. 83.35 (N.D. Ill.), the Eastern District of Wisconsin does not employ an involuntary appointment system for lawyers admitted to practice in the District. Instead, the District relies on the willingness of lawyers to sign up for the Pro Bono Attorney Panel

and, once there, accept appointments as needed. *See* Pro Bono Program, *available at*: http://www.wied.uscourts.gov/pro-bono-program.

The District is grateful to the lawyers who participate in the Pro Bono Program, but there are never enough volunteers, and those who do volunteer rarely take more than one or two cases a year. This is understandable, as many are already busy attending to fee-paying clients. Although the Pro Bono Program does provide for payment of certain litigation expenses, it does not directly compensate a lawyer for his or her time. Participants may seek attorney's fees when permitted by statute, such as in successful § 1983 cases, but they will otherwise go unpaid. The small pool of attorneys available to this District for pro bono appointments stands in stark contrast to that of the Court of Appeals, which regularly recruits counsel from across the nation to represent pro se plaintiffs on appeal. *See, e.g.*, *James*, 889 F.3d at 323 (appointing counsel from Washington, D.C. to represent the pro se appellant); *McCaa*, 893 F.3d at 1029 (same).

Against the thin ranks of ready and willing counsel rises the overwhelming tide of pro se prisoner litigation in this District.[1] In 2010, approximately 300 civil actions were filed by prisoner litigants. More than

---

[1] Although non-prisoner pro se litigants may also be considered for the appointment of counsel under § 1915, the Court does not address that set of pro se litigants here for a few reasons. First, the volume of non-prisoner pro se litigation is miniscule compared to that brought by prisoners. Second, prisoners are much more likely to request the appointment of counsel. Paradoxically, prisoners are usually far better equipped to litigate than non-prisoners, as prisoners have access to electronic filing, institution law libraries, and fellow prisoners who offer services as "jailhouse lawyers." Yet, learning a little of the legal system means that prisoners know they can request the appointment of pro bono counsel, which they do with regularity.

half sought habeas corpus relief, while the remainder were § 1983 actions alleging violations of constitutional rights. Since then, the number of habeas corpus cases has remained largely steady at around 130 per year, while the volume of § 1983 lawsuits has skyrocketed. About 300 § 1983 actions were filed in 2014, and another 300 in 2015—each equal to the entirety of the District's civil prisoner filings from just four years earlier. In 2016, § 1983 actions numbered 385, in 2017 it ballooned to 498, and in 2018 it grew to 549. All told, well over a third of the District's new case filings are submitted by unrepresented inmates. On its best day, this District has the resources to realistically consider appointment of counsel in only a tiny fraction of these cases.

Finally, it must be remembered that, when a court determines that counsel recruitment is appropriate, it can take months to locate a willing lawyer. This delay works to the detriment of all parties and contravenes Congress's instruction in Federal Rule of Civil Procedure 1 that district courts must endeavor to secure the "just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Thus, looming large over each request for counsel are a court's ever-more-limited time and resources.

With these considerations in mind, the Court returns to the question presented: whether counsel can and should be recruited to represent Plaintiff at this stage in this case. First, a court asks whether the litigant has made "reasonable" efforts to obtain his own representation. *Pruitt*, 503 F.3d at 655; *Jackson v. County of McLean*, 953 F.2d 1070, 1073 (7th Cir. 1992). It is a question not often litigated; many district court judges either overlook arguably unreasonable efforts at obtaining counsel, or they impose eminently practical requirements such as the submission of evidence demonstrating that the prisoner has tried and failed to secure

representation from several lawyers. *See, e.g.*, *Kyle v. Feather*, No. 09-cv-90-bbc, 2009 WL 2474627, at *1 (W.D. Wis. Aug. 11, 2009).

The first element of *Pruitt* is fairly easy to satisfy, but it is not toothless, and it is not a mere technical condition of submitting a certain number of rejection letters. If it was, then a Wisconsin prisoner litigating a § 1983 action could submit rejection letters from ten randomly selected criminal defense lawyers from Nevada and call his work complete. This cannot be. The purpose of the reasonable-efforts requirement is to ensure that if a court and private lawyers must expend scarce resources to provide counsel for a prisoner, he has at least made a good-faith effort to avoid those costs by getting a lawyer himself. To fulfill this duty, a pro se prisoner should reach out to lawyers whose areas of practice suggest that they might consider taking his case. If he learns that some of the lawyers he has contacted do not, he should reach out to others before he concludes that no one will help him.

Plaintiff provides some evidence that he has attempted to secure counsel in this matter. He includes copies of the rejection letters from law firms that he received in response to his request. ECF No. 37-1. The Court is satisfied that Plaintiff has met the first *Pruitt* factor to attempt to secure counsel on his own.

Plaintiff's request must also succeed on the second *Pruitt* question: whether the difficulty of the case exceeds his capacity to coherently present it. This assessment must be made in light of the particular capabilities and circumstances presented by each pro se litigant. *James*, 889 F.3d at 326–27. The Court of Appeals explains:

> The second step is itself grounded in a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's

> competence to litigate those claims himself. The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand. Ultimately, the question is not whether a lawyer would present the case more effectively than the pro se plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant. Rather, the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself. Notably, this inquiry extends beyond the trial stage of the proceedings. The relevant concern is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty. This includes all of the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.

*Id.* (citations and quotations omitted). While a court need not address every concern raised in a motion for appointment of counsel, it must address "those that bear directly" on the individual's capacity to litigate his case. *McCaa*, 893 F.3d at 1032.

The balancing contemplated in the second *Pruitt* step must be done against the backdrop that district courts cannot be expected to appoint counsel in circumstances which are common to all or many prisoners. *See Bracey v. Grondin*, 712 F.3d 1012, 1017–18 (7th Cir. 2013); *Pruitt*, 503 F.3d 647, 656 (observing that the Seventh Circuit has "resisted laying down categorical rules regarding recruitment of counsel in particular types of cases"); *Harper v. Bolton*, 57 F. Supp. 3d 889, 893 (N.D. Ill. 2014). Doing so would place untenable burdens on court resources. It would also turn the discretion of § 1915(e)(2) on its head, making appointment of counsel the rule rather than the exception.

Several pronouncements from the Court of Appeals appear to be in tension with this principle. First, the Seventh Circuit notes that "complexity increases and competence decreases as a case proceeds to the advanced phases of litigation." *James*, 889 F.3d at 327. It deems the "[a]dvanced phases" to include those from discovery onward. *Id.*; *McCaa*, 893 F.3d at 1032. But nearly every prisoner case proceeds to discovery, as the district court applies exceedingly lenient review during initial screening.

Second, the Seventh Circuit instructs that district courts should evaluate a prisoner's competency irrespective of the involvement of a "jailhouse lawyer." *McCaa*, 893 F.3d at 1033; *Walker v. Price*, No. 17-1345, 2018 WL 3967298, at *5 (7th Cir. Aug. 20, 2018). How courts should do this is not clear. A court rarely knows whether a filing was prepared by the plaintiff or someone helping him. And if a court does know that the plaintiff is receiving help, how can it assess his ability to litigate without knowing which portions of the filings are his work, and which come from the jailhouse lawyer? In *Walker*, the court determined that the inmate's work product decreased in quality after his jailhouse lawyer was transferred to another prison. 2018 WL 3967298, at *6. Yet a savvy prisoner, looking to secure counsel for himself, could do this on purpose, crafting his filings to downplay his own litigation capabilities. A court would have no way to assess whether the inmate is sandbagging it.

Finally, the Court of Appeals indicates that claims involving the state of mind of the defendant, such as those involving deliberate indifference, are particularly complex. *James*, 889 F.3d at 327–28; *McCaa*, 893 F.3d at 1032. Yet a government official's culpable mental state is the foundation for most constitutional claims. Indeed, it is often the defining characteristic that sets § 1983 claims apart from their state-law tort analogues. Deliberate

indifference is essential to nearly all claims of cruel and unusual punishment, excessive force, mistreatment of medical needs, and First Amendment and due process violations. *See Kingsley v. Henderson*, 135 S. Ct. 2466, 2473 (2015); *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hambright v. Kemper*, 705 F. App'x 461, 462 (7th Cir. 2017); *Milton v. Slota*, 697 F. App'x 462, 464 (7th Cir. 2017) ("*[N]egligently* inflicted harm does not amount to a constitutional violation.") (emphasis in original). Taken together, these claims comprise the vast majority of prisoner litigation in this District. If state-of-mind issues are generally beyond the ability of most pro se litigants to prove, then a court likely would need to appoint counsel in nearly every prisoner case. This is plainly impossible.

The guiding rule has always been that appointment of counsel is the exception rather than the rule in pro se prisoner litigation. Yet a confluence of all-too-common circumstances—discovery, jailhouse lawyers, and claims concerning state of mind—militate in favor of the appointment of counsel. As the list of reasons to appoint counsel grows, the reasons not to do so shrink. This District's resources have not kept pace.

Against this backdrop, the Court finds that Plaintiff has presented sufficient evidence and arguments showing that he cannot litigate or try this matter competently on his own. To begin, as Plaintiff intuits, a lawyer would be helpful in navigating the legal system; however, Plaintiff's lack of legal training brings him in line with practically every other prisoner litigating in this Court. Further, the Court assists all pro se prisoner litigants by providing copies of the most pertinent federal and local procedural rules along with its scheduling order. Thus, ignorance of the law or court procedure is generally not a qualifying reason for appointment of counsel.

Page 8 of 10
Case 2:22-cv-01205-JPS    Filed 04/10/24    Page 8 of 10    Document 41

Similarly, nearly all prisoner litigants face the challenge of being unable to fact-find and interview witnesses from prison.

However, Plaintiff raises many meritorious arguments. Significantly, Plaintiff presents evidence that he has serious issues with his vison that impede his ability to litigate this case alone. ECF No. 37 at 4. Plaintiff is currently undergoing treatment at UW Health Ophthalmology and is scheduled to have a corneal transplant in the near future. *Id.* Plaintiff maintains that this treatment will require the discontinuation of his contact lenses, which he requires to see properly, for potentially months. Plaintiff maintains that his vision abilities will decrease dramatically during the healing process for this treatment. *Id.* Plaintiff's case also presents complicated legal issues, including but not limited to the likely need for an expert to testify regarding the appropriateness of the eye care Plaintiff received. Taken together, the Court finds that the difficulty of the case exceeds Plaintiff's capacity to coherently present it. As such, the Court will accordingly grant Plaintiff's motion to appoint counsel.

The Court will attempt to recruit counsel to litigate the case on Plaintiff's behalf, bearing in mind that there is no guarantee that the Court will be able to secure counsel for him. Defendants must still file a responsive pleading to the second amended complaint and must also file any exhaustion summary judgment motions as directed in the Court's prior screening order. *See* ECF No. 39. Absent these two filings, however, the Court will stay all remaining deadlines until counsel is secured.

Finally, the Court will deny Plaintiff's motion to participate in early neutral evaluation. The Court encourages parties to utilize the magistrate judges in this district for the purposes of mediation; however, the Court will only refer a case to a mediation at the request of *both* parties. As such,

Page 9 of 10
Case 2:22-cv-01205-JPS    Filed 04/10/24    Page 9 of 10    Document 41

Plaintiff's motion is premature, and the Court will accordingly deny the motion. The parties may jointly request mediation at a later date if they so choose.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to appoint counsel, ECF No. 36, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to order parties to participate in early neutral evaluation, ECF No. 40, be and the same is hereby **DENIED as premature**; and

**IT IS FURTHER ORDERED** that all case deadlines, except as described in the text of this Order, be and the same are hereby **STAYED** pending the appointment of counsel.

Dated at Milwaukee, Wisconsin, this 10th day of April, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge