IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

DAMONTA JENNINGS,

      Plaintiff,

      v.                          Case No. 2022CV01205

CHARLES DOMBECK, et al.,

      Defendants.

## BRIEF IN SUPPORT OF STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Inmate-Plaintiff Damonta Jennings alleges that various medical staff members improperly delayed a procedure to treat an eye condition. He further alleges that, because of the delay, he had to undergo a corneal transplant surgery. He brings claims under 42 U.S.C. § 1983 and the Eighth Amendment for deliberate indifference to a serious medical need against Advanced Practice Nurse Prescriber (APNP) Mary Moore, APNP Charles Dombeck, Health Services Manager (HSM) Robert Weinman, Assistant Health Services Manager (AHSM) Ashley Haseleau, Dr. Laura Sukowaty, and Dr. Daniel LaVoie (collectively, "the State Defendants"). (Dkt. 39.) He also brings a state-law medical malpractice claim against Moore, and negligent supervision claims against Weinman and Haseleu.[1] (Dkt. 39:7-8.)

---

[1] Jennings also brings claims against Dr. Bethany South, who appears separately.

Jennings's claims against the State Defendants fail as a matter of law. The Eighth Amendment claims fail because (A) Jennings cannot show that any delay in care caused the corneal transplant of which he complains; (B) the State Defendants did not act with deliberate indifference because they provided extensive and appropriate care; (C) the State Defendants lacked the power to control offsite scheduling; and (D) the State Defendants are entitled to qualified immunity. The state-law claims fail because (A) the Court should relinquish supplemental jurisdiction; (B) Jennings has not named an expert to establish the standard of care for his medical malpractice claim; (C) Jennings cannot show that Moore's care caused any injury; (D) Jennings did not comply with Wisconsin's notice of claim statute as required for his claims of negligent supervision. As a result, the Court should grant summary judgment to the State Defendants and dismiss all claims against them with prejudice.

## Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is an "integral part of the Federal rules," and its purpose "is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 327 (1986). A court's decision to grant summary judgment "is not discretionary"—when "a moving party shows that the opposing party lacks evidence to support each element of a

claim, summary judgment must be granted in favor of the movant." *Baron v. Frederickson*, 419 F. Supp. 2d 1056, 1063 (W.D. Wis. 2006) (citation omitted).

"By its very terms," the summary judgment standard "provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A "material" fact is one that, under the applicable substantive law, "might affect the outcome of the suit." *Anderson*, 477 U.S. at 248. The "materiality determination rests on the substantive law" because it identifies "which facts are critical and which facts are irrelevant." *Id.* A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"The party moving for summary judgment has the initial burden of demonstrating there is no genuine dispute of material fact: 'it may discharge this responsibility by showing "that there is an absence of evidence to support the nonmoving party's case."'" *Bunn v. Fed. Deposit Ins. Corp.*, 908 F.3d 290, 295 (7th Cir. 2018) (citations omitted). Once the movant satisfies his initial responsibility, the burden then shifts to the nonmovant, who must "come forward with specific facts demonstrating that there is a genuine issue for trial." *Id.* (citation omitted); *see also Celotex*, 477 U.S. at 324 ("[R]ule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there

is a genuine issue for trial.'"). A nonmovant is "entitled to all reasonable inferences in his favor, but 'inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion.'" *Lavite v. Dunstan*, 932 F.2d 1020, 1029 (7th Cir. 2019) (citation omitted).

**Eighth Amendment Standard**

The Eighth Amendment, made applicable to the states by the Fourteenth Amendment, protects prisoners against "grossly inadequate medical care." *Pyles v. Fahim*, 771 F.3d 403, 409-10 (7th Cir. 2014) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). In order to establish an Eighth Amendment claim based on deficient medical care, the plaintiff must demonstrate two elements: (1) an objectively serious medical condition; and (2) an official's deliberate indifference to that condition. *Pyles*, 771 F.3d at 409-10.

The first element, an objectively serious medical condition, is satisfied if a doctor has diagnosed the condition as requiring treatment, or the need for treatment would be obvious to a layperson. *Pyles*, 771 F.3d at 409. Moreover, "in cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm." *Jackson v. Pollion,* 733 F.3d 786, 790 (7th Cir. 2013) (citation omitted).

The second element, whether the officials acted with deliberate indifference, is a subjective standard. *Pyles*, 771 F.3d at 409. An official is deliberately indifferent if that official was aware that the prisoner faced a substantial risk of serious harm but

4

disregarded the risk by consciously failing to take reasonable measures to address it. *Forbes v. Edgar*, 112 F.3d 262, 266 (7th Cir. 1997); *Farmer v. Brennan* 511 U.S. 825, 847 (1994). A plaintiff faces an uphill battle when raising a deliberate indifference claim, as liability requires "[s]omething more than negligence or even malpractice." *Pyles*, 771 F.3d at 409. Rather, an inmate must meet "essentially a criminal recklessness standard, that is, ignoring a known risk." *McGee v. Adams*, 721 F. 3d 474, 481 (7th Cir. 2013) (citation omitted). Because the standard is subjective, it is "not enough that there was a danger of which a prison official objectively should have been aware." *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000). Instead, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *see also Davis v. Kayira*, 938 F.3d 910, 915 (7th Cir. 2019).

When a prisoner alleges that he received some treatment for his medical condition, but it was inadequate, the relevant question is whether the medical provider's actions were "such a substantial departure from accepted professional judgment, practice, or standard, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261-62 (7th Cir. 1996). Courts defer to a medical professional's treatment decision unless no minimally competent professional would have chosen the same course of treatment under the circumstances. *Pyles*, 771 F.3d at 409.

A court should examine the totality of an inmate's medical care when considering whether that care demonstrates deliberate indifference to a serious medical need. *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997). "A finding that a defendant's neglect of a prisoner's condition was an 'isolated occurrence,' . . . or an 'isolated exception' . . . to the defendant's overall treatment of the prisoner ordinarily militates against a finding of deliberate indifference." *Id.* (citations omitted).

**Section 1983 Standards**

Jennings brings his Eighth Amendment claims under 42 U.S.C. § 1983. Two axiomatic principles govern § 1983 claims. The first is that "[f]or constitutional violations under § 1983, a government official is only liable for his or her own misconduct. … [An official] is therefore liable only if she was personally involved in the constitutional violation." *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021) (quotation marks and quoted sources omitted). The second is that officials cannot be held liable under § 1983 "if the remedial step was not within their power." *Miller v. Harbaugh*, 698 F.3d 956, 962 (7th Cir. 2012). Applying these principles, courts in this district and others routinely hold that institution HSMs are not liable under § 1983 for health care that they do not have the power to alter. *See, e.g., Poirier v. Gierach*, No. 23-CV-1401-SCD, 2024 WL 4851049, at *7 (E.D. Wis. Nov. 21, 2024) (nurses who did not have "any control" over doctor's treatment not liable under § 1983 because they lacked personal involvement and remedial power); *Jackson v. Murphy*, No. 17-CV-194-PP, 2020 WL 2840126, at *14 (E.D. Wis. June 1, 2020), *aff'd,* 856 F. App'x 625 (7th Cir. 2021) (HSMs not liable "for their handling of the plaintiff's grievances").

**Argument**

Jennings's Eighth Amendment and state-law claims fail as a matter of law. As now explained, the Eighth Amendment claims fail because (A) Jennings cannot show that any delay in care caused the corneal transplant of which he complains; (B) the State Defendants did not act with deliberate indifference because they provided extensive and appropriate care; (C) the State Defendants lacked the power to control offsite scheduling; and (D) the State Defendants are entitled to qualified immunity. The state-law claims should be dismissed because (A) the Court should relinquish supplemental jurisdiction; (B) Jennings has not named an expert to establish the standard of care for his medical malpractice claim; (C) Jennings cannot show that Moore's care caused any injury; (D) Jennings did not comply with Wisconsin's notice of claim statute as required for his claims of negligent supervision.

## I. The Eighth Amendment claims fail as a matter of law.

**(A)    Jennings cannot show that any delay in care caused the corneal transplant of which he complains.**

As already established, "in cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm." *Jackson*, 733 F.3d at 790. Stated another way, a plaintiff must present "verifying medical evidence that shows his condition worsened because of the delay." *Knight v. Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009). "That is, a plaintiff must offer medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Jackson*, 733 F.3d at 790 (quoted source

7

omitted). This is because "there is no tort … without an injury…." *Id.*; *see also Lord v. Beahm*, 952 F.3d 902, 904 (7th Cir. 2020) (plaintiff must show that deliberate indifference "result[ed] in some injury").

Jennings can identify no evidence that any delay in care caused him harm. On the contrary, the undisputed evidence establishes that the blurry vision associated with keratoconus (or corneal ectasia) can be improved with contact lenses, which is exactly what Jennings received. (Joint PFOF at 14.) The evidence also establishes that untreated keratoconus does not lead to blindness or no-light-perception vision loss. (State PFOF, ¶ 9.) Further, Jennings did in fact undergo a cross-linking procedure in October 2022. (Joint PFOF at 18.) When he later underwent a corneal transplant in the left eye, the procedure was successful. (Joint PFOF at 18-19.) From this undisputed medical record, no evidence of harmful delay emerges.

Jennings suggests that a delay in receiving the cross-linking procedure caused his underlying keratoconus to worsen. (Dkt. 39:7-8.) This, he asserts, meant that he had to undergo a corneal transplant he might otherwise have avoided. However, it is not intuitive that cross-linking, which does not resolve the underlying keratoconus, is preferrable to a corneal transplant, which does (or at least might). (Joint PFOF at 14.) Moreover, the sole medical evidence on record indicates that corneal cross-linking does not resolve keratoconus. (State DPFOF ¶¶ 1-2.) In fact, Dr. Sukowaty declares that, to a reasonable degree of medical certainty, Jennings would have needed the corneal transplant regardless. (State DPFOF ¶ 2.) Jennings's unsupported lay opinion cannot create a genuine dispute of fact on the point. *Jackson*, 733 F.3d at 790

(requiring "verifying medical evidence" that the delay caused harm). And, because there is no genuine dispute of fact, Jennings has failed to show any harm resulting from a delay in care.[2]

In sum, any delay in performing the cross-linking did not cause Jennings harm beyond the harm caused by his underlying condition. His Eighth Amendment claims therefore fail as a matter of law. *See id.*

**(B)    The State Defendants did not act with deliberate indifference because they provided extensive and appropriate care.**

A court looks to the totality of an inmate's medical care when analyzing deliberate indifference. *Gutierrez*, 111 F.3d at 1375. The totality of Jennings's care is set out in the proposed findings of fact and need not be repeated at length, but some of its highlights bear re-mentioning. These highlights include the facts that Moore, Dombeck, Dr. Sukowaty, and Dr. LaVoie repeatedly ordered consultations with multiple offsite specialists, including experts at UW Madison; ordered imaging, topography, and glasses, and prescriptions on those specialists' recommendations; ordered cross-linking within two weeks of a specialists' recommendation on March 28, 2022; and, ultimately, approved a corneal transplant procedure, which was successful. (Joint PFOF at 10-19.) Based on this history, no fact-finder could reasonably find that the State Defendants "consciously fail[ed] to take reasonable measures to address" Jennings's keratoconus, *see Forbes*, 112 F.3d at 266, much less

---

[2] Jennings also asserted at his deposition that he experienced light sensitivity and headaches following the corneal transplant. These harms fall beyond the scope of the screening order. Regardless, no medical evidence suggests they might have been avoided had the transplant occurred earlier.

that no minimally competent professional would have chosen the same course of treatment under the circumstances, *see Pyles*, 771 F.3d at 409. They therefore did not act with deliberate indifference. *Id*.

To set against all the efforts made on his behalf, Jennings complains that he should have undergone a cross-linking procedure sooner. However, his mere disagreement about the optimal course of treatment does not state a constitutional claim. *See Pyles*, 771 F.3d at 409. Jennings was "not entitled to demand specific care," and his mere disagreement with the treatment ordered by his doctors does not suffice. *See Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). Even if his many providers did not do everything Jennings would have liked, the extensive treatment they did provide belies any implication that they "ignored" him, as would be required to show deliberate indifference.

**(C)      The State Defendants lacked the power to control offsite scheduling.**

Defendants cannot be held liable under 42 U.S.C. § 1983 for conduct beyond their control. *See generally Miller*, 698 F.3d at 962. This axiom disposes of the present claims in at least two ways.

First, none of the State Defendants control scheduling at offsite providers. (Joint PFOF at 6-7, 16-18; State PFOF ¶ 10.) Here, Jennings bases his claim on an alleged delay in performing a cross-linking procedure. However, such a procedure requires a specialist, and, in this case, UW and Valley Eye Associates generally controlled the scheduling. (Joint PFOF at 16-18.) Schedulers at the Department of Corrections (who are not defendants in any case) took what they were given. (Joint

PFOF at 16-18.) The State Defendants are not liable for scheduling they did not control. *See id.*

Second, as to Weinman and Haseleau, their administrative positions lacked the authority to order offsite specialists appointments at all. (State PFOF, ¶¶ 4-5.) Because they lacked the power to order the relief Jennings sought, they are not liable for failing to provide it. *Cf. Poirier*, 2024 WL 4851049, at *7 (nurses who did not have "any control" over treatment not liable under § 1983); s*ee also Teas v. Suliene*, No. 16-CV-452-BBC, 2019 WL 4451403, at *10 (W.D. Wis. Sept. 17, 2019) (HSMs entitled to defer to physicians).

**(D)      The State Defendants are entitled to qualified immunity.**

Even if the Court declines to grant summary judgment on the grounds argued above, the State Defendants remain entitled to qualified immunity. "Qualified immunity protects government officials from damages liability 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019) (citation omitted). The test for qualified immunity "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distractions, and liability when they perform their duties reasonably." *Kemp v. Liebel*, 877 F.3d 346, 350 (7th Cir. 2017) (citation omitted).

Although qualified immunity is "an affirmative defense," once it's raised, "the burden shifts to the plaintiff to defeat it." *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir.

2019). To do so, a "plaintiff must show two elements: first, that the facts show 'a violation of a constitutional right,' and second, that the 'constitutional right was clearly established at the time of the alleged violation.'" *Id.* A court has "discretion to choose which of the elements to address first." *Id.*

The "clearly established" requirement is based on the "principle of fair notice." *Campbell*, 936 F.3d at 545. Clearly established thus "means that, at the time of the [official's] conduct, the law was '"sufficiently clear' that every 'reasonable official would understand that what he is doing'" is unlawful." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (citation omitted). "In other words, existing law must have placed the constitutionality of the [official's] conduct 'beyond debate.'" *Id.* (citation omitted).

A legal principle is beyond debate only when it has a "sufficiently clear foundation in then-existing precedent." *Wesby*, 138 S. Ct. at 589 (citation omitted). That means the "rule must be 'settled law,'" *i.e.*, "dictated by 'controlling authority' or 'a robust "consensus of cases of persuasive authority."'" *Id.* at 589–90 (citation omitted).

Given the "emphasis on notice, clearly established law cannot be framed at a 'high level of generality.'" *Campbell*, 936 F.3d at 545. To avoid generality, a court "must determine whether a right is clearly established 'in light of the specific context of the case, not as a broad general proposition.'" *Leiser*, 933 F.3d at 702. That requires a court to consider whether the law clearly prohibited "the [official's] conduct in the particular circumstances before him." *Wesby*, 138 S. Ct. at 590. Although a plaintiff

need not point to a "a case 'on all fours' with the facts" presented, he must "show some settled authority that would have shown a reasonable" official in the same position that his or her "actions violated the Constitution." *Leiser*, 933 F.3d at 702; *see also Campbell*, 936 F.3d at 546 (noting that qualified immunity attaches when the legal principles have not "been applied in a factual context specific enough to provide fair notice to the defendants that their conduct was unconstitutional, regardless of whether the "broad principles" otherwise have "support in [the] caselaw").

In sum, the "demanding" qualified immunity standard "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Wesby*, 138 S. Ct. at 589 (citation omitted); *see also Campbell*, 936 F.3d at 546 ("The Supreme Court's message is unmistakable: Frame the constitutional right in terms granular enough to provide fair notice because qualified immunity 'protects all but the plainly incompetent or those who knowingly violate the law.'").

Here, it was not clearly established that Jennings suffered a cognizable harm from any delay in treatment. Further, it was not clearly established that the care provided by the State Defendants amounted to deliberate indifference, nor that they had the power to provide the relief Jennings sought. Accordingly, the State Defendants remain entitled to qualified immunity.

**II. The state-law claims fail as a matter of law.**

**(A)    The Court should relinquish supplemental jurisdiction.**

The general rule is that, after dismissing all federal claims, courts should relinquish supplemental jurisdiction over any remaining state-law claims. 28 U.S.C.

§ 1367(c)(3); *Burritt v. Ditlefsen*, 807 F.3d 239, 252 (7th Cir. 2015) ("'The general rule, when the federal claims fall out before trial, is that the [district court] should relinquish jurisdiction over any supplemental (what used to be called "pendent") state law claims in order to minimize federal judicial intrusion into matters of purely state law."' (citation omitted)). The Court should follow that rule here. Having dismissed the Eighth Amendment claims for the reasons above, it should relinquish supplemental jurisdiction over the malpractice negligence claims.

**(B)      Jennings has not named an expert to establish the standard of care for his medical malpractice claim.**

Jennings proceeds on a medical malpractice claim against Moore. A claim for medical malpractice requires proof that a medical professional breached a duty that resulted in an injury or damages. *Paul v. Skemp*, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860. "At trial, the plaintiff must establish the standard of care, show that the defendant failed to conform to the standard of care, and prove that the defendant's failure to conform to the standard of care caused the plaintiff's injury." *Carney-Hayes v. Nw. Wis. Home Care, Inc.*, 2005 WI 118, ¶ 37, 284 Wis. 2d 50, 699 N.W.2d 524.

Medical malpractice lawsuits generally require expert testimony to establish the standard of care. *Id.* "Unless the situation is one where the common knowledge of laymen affords the basis for finding negligence, expert medical testimony is required to establish the degree of care and skill required of a physician." *Christianson v. Downs*, 90 Wis. 2d 332, 279 N.W.2d 918 (1979). While a lay person may be able to conclude, for example, that "there was negligence if a sponge or surgical instrument is left in an incision or if the wrong organ or other body part was

removed in surgery, a lay person cannot conclude without expert medical testimony whether a treating physician met the accepted standard of care in treating measles." *Id.*

Similarly, expert testimony is required to establish the degree of care required of a Nurse Practioner's response to a specialist's recommendations was appropriate. This is not the type of question that a lay person has knowledge to determine. It is well established that plaintiffs must provide expert testimony in cases such as this one in order to survive summary judgment. *Ollman v. Wisconsin Health Care Liab. Ins. Plan*, 178 Wis. 2d 648, 667, 505 N.W.2d 399 (Ct. App. 1993); *Estate of Hegarty ex rel. Hegarty v. Beauchaine*, 2006 WI App 248, ¶ 154, 297 Wis. 2d 70, 159-60, 727 N.W.2d 857 ("To establish causation in a medical malpractice case . . . testimony from medical experts is essential. '[T]he lack of expert testimony on the question of causation results in an insufficiency of proof[.]'" (citation omitted)).

Jennings retained counsel to represent him in this lawsuit. Nevertheless, Jennings has not disclosed any expert to testify regarding the standards of care required of NP Moore and cannot satisfy his burden of proof on an element of his claim.

**(C)**      **Jennings cannot show that Moore's care caused any injury.**

Further, Jennings cannot show that he suffered any injury from NP Moore not taking immediate action on Dr. Kurt's recommendation for corneal cross-linking. Approval for the procedure was requested by Dr. Kurt on March 28, 2022. Barely a week later, NP Dombeck emailed Dr. Sukowaty seeking approval for the corneal

crosslinking, which he received. Plaintiff has no expert to opine that this nine-day approval timeframe resulted in any injury to him or worsened his condition, and therefore, cannot show that he suffered any cognizable injury as required by state law. *See Skemp*, 2001 WI 42, ¶ 17. Therefore, his negligence claim cannot now survive summary judgment.

**(D)        Jennings did not comply with Wisconsin's notice of claim statute as required for his claims of negligent supervision.**

Jennings was allowed to proceed on Wisconsin state law negligent supervision claims against HSM Weinman and AHSM Haseleu. (Dkt. 39:8.) However, such claims require that Plaintiff file a notice of claim with the Attorney General in order to commence suit, and Jennings filed no notices of claim related to this case.

Under Wis. Stat. § 893.82, a plaintiff must file a notice of claim with the Attorney General in order to commence suit against a state officer, employee, or agent.  The notice statute provides:

> . . . no civil action or civil proceeding may be brought against any state officer, employee or agent for or on account of any act growing out of or committed in the course of the discharge of the officer's, employee's or agent's duties . . . unless within 120 days of the event causing the injury, damage or death giving rise to the civil action or civil proceeding, the claimant in the action or proceeding serves upon the attorney general written notice of a claim stating the time, date, location and the circumstances of the event giving rise to the claim for the injury, damage or death and the names of persons involved, including the name of the state officer, employee or agent involved.

Wis. Stat. § 893.82(3).

Compliance with the notice statute is jurisdictional. *See Riccitelli v. Broekhuizen*, 227 Wis. 2d 100, 116, 595 N.W.2d 392 (1999). "As a jurisdictional

statute, § 893.82(3) requires strict compliance." *Id*. "The requirements of the statute are not general guidelines: they are rules that must be adhered to with exact care." *Newkirk v. DOT*, 228 Wis. 2d 830, 833, 598 N.W.2d 610 (Ct. App. 1999). Substantial compliance is insufficient to meet the terms of the statute. *Kellner v. Christian*, 197 Wis. 2d 183, 195, 539 N.W.2d 685 (1995). It is irrelevant whether the state has been prejudiced. *Carlson v. Pepin Cty.*, 167 Wis. 2d 345, 357, 481 N.W.2d 498 (Ct. App. 1992), *see also Kashishian v. Port*, 167 Wis. 2d 24, 51-52, 481 N.W.2d 277 (1992) (suit was barred for failure to timely file the notice even if the assigned Assistant Attorney General had timely actual notice).

Wis. Stat. § 893.82's notice of claim requirement does not apply to medical malpractice claims. Wis. Stat. § 893.82(5m). Medical malpractice claims are claims of "negligent medical acts or decisions made in the course of rendering professional medical care.") *Killian v. Nicholson*, No. 17-C-895, 2018 WL 1902587, at *3 (E.D. Wis. Apr. 20, 2018) (citing *McEvoy v. Group Health Coop.*, 213 Wis. 2d 507, 530, 570 N.W.2d 397 (1997)). However, the negligent supervision claim is a negligence claim against the HSM and the AHSM, which do require compliance with Wisconsin's notice-of-claim statute. Non-doctors may not be sued for medical malpractice for the purposes of the notice statute. *Tackett v. Jess*, 853 F. App'x 11, 14 (7th Cir. 2021) (citing *Patients Comp. Fund v. Lutheran Hosp.-LaCrosse, Inc.*, 223 Wis.2d 439, 588 N.W.2d 35, 41 (1999).

As the HSM and AHSM, Weinman and Haseleu occupy administrative roles. Indeed, the negligent supervision claim against them does not involve allegations

about the medical care or treatment that Weinman and Haseleu provided to Jennings but rather concerns their supervision of other staff. Given that the negligent supervision claim is not about "the acts or decisions made in the course of rendering professional medical care," it is not subject to the medical malpractice exemption to the notice of claim statute. Consequently, Jennings was obligated to comply with the notice of claim statute. However, he filed no notices of claim related to this case and therefore failed to comply with the statute's requirements. (State PFOF ¶ 3.) Accordingly, the negligent supervision claim must be dismissed.

## Conclusion

For the reasons stated above, the Court should grant summary judgment to the State Defendants and dismiss all claims against them with prejudice.

Dated: October 3, 2025.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin


s/ Jonathon Davies
JONATHON M. DAVIES
Assistant Attorney General
State Bar #1102663

KATHRYN A. PFEFFERLE
Assistant Attorney General
State Bar #1097651

Attorneys for State Defendants

Wisconsin Department of Justice

Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 261-8125 (Davies)
(608) 267-2070 (Pfefferle)
(608) 294-2907 (Fax)
Jonathon.Davies@wisdoj.gov
Kathryn.Pfefferle@wisdoj.gov