DAMONTA JENNINGS,

    Plaintiff,

  v.

CHARLES DOMBECK, et al.,         Case No. 22-cv-01205

    Defendants.

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BETHANY SOUTH'S MOTION FOR SUMMARY JUDGMENT

## <u>INTRODUCTION</u>

Plaintiff, Damonta Jennings ("Jennings") filed this lawsuit against Defendants Mary Moore, Charles Dombeck, Robert Weinmann, Ashley Haseleu, Daniel La Voie, Laura Sukowaty (collectively "State Defendants"), and Bethany South ("Dr. South") under 42 U.S.C. § 1983. In his claims against Dr. South, Jennings alleged that Dr. South violated his Eighth Amendment rights by delaying care for his keratoconus condition. Jennings also alleged that Dr. South is liable for medical malpractice under Wisconsin tort law. The case is now at the summary judgment phase. In Dr. South's motion for summary judgment, she demonstrated that she did not act with deliberate indifference to Jennings' serious medical needs during the events underlying his claims because she did not make any treatment decisions without professional judgment and with substantial knowledge that Jennings was in a substantial risk of harm. Further, and independently, Dr. South demonstrated that Jennings' Eighth Amendment claim against her fails because he cannot demonstrate that she caused a delay in his care nor that any alleged delay in care caused him to suffer harm.

Additionally, Dr. South demonstrated that Jennings' medical malpractice claim against her fails because Jennings cannot demonstrate that she breached a duty of care, nor that any alleged breach in her duty of care caused him any harm. In support of her summary judgment motion, Dr. South provided a joint agreed upon statement of facts and a disputed proposed finding of fact supported by the record and her sworn declaration.

In his response, Jennings asserted that Dr. South's motion is rife with disputed facts. However, Jennings did not dispute any of Dr. South's disputed proposed findings of fact. Rather, Jennings' response relied exclusively on his own cursory recitation of immaterial facts to demonstrate that disputed facts exist. Simply put, Jennings admitted that Dr. South, as an optometrist, could not and did not treat his keratoconus. The minimal actions that Dr. South took in the events underlying Jennings' claims are insufficient for Jennings to carry his burden to demonstrate that his claims against her can survive summary judgment. For these reasons, Jennings failed to demonstrate that his Eighth Amendment and medical malpractice claims against Dr. South should survive beyond summary judgment.

## ARGUMENT

Under Fed. R. Civ. P. 56, summary judgment should be granted when there are no genuine disputes of material facts, and the moving party is entitled to judgment as a matter of law. A factual dispute is "material" if the dispute could potentially affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Factual disputes over irrelevant or nondispositive issues will not preclude an otherwise proper motion for summary judgment. *Id*. (citation omitted

If a moving party has met its burden to support its factual assertions with admissible evidence under Fed. R. Civ. P. 56(c), the non-moving party must show that there is more than merely metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio* Corp., 475 U.S. 574, 586 (1986). In order to create a genuine issue of material fact, a plaintiff must support their disputes of proposed facts with citations to admissible evidence. *See e.g.* Anderson, at 248-49 (citations omitted); Fed. R. Civ. P. 56(c)(1)(A); Civ. L. R. 56(2). Stated more colloquially, "summary judgment 'is the "put up or shut up" moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" *Johnson v. Cambridge Indus., Inc.,* 325 F. 3d 892, 901 (7th Cir. 2003) (quoting *Schact v. Wisconsin Dep't of Corr.,* 175 F. 3d 497, 504 (7th Cir. 1999)).

Here, Jennings failed to demonstrate any material disputes of fact or law to defeat Dr. South's demonstration that she is entitled to summary judgment dismissing Jennings' Eighth Amendment and medical malpractice claims against her because Jennings cannot carry his burden of proof on either claim. As described below, this Court has multiple, independent grounds to dismiss Jennings' claims against Dr. South on summary judgment.

## I.    There Are No Disputed Facts.

Contemporaneously with her summary judgment motion, Dr. South filed a Joint Agreed Upon Proposed Findings of Fact ("Joint PFOF") and a Disputed Proposed Findings of Fact ("Dr. South's PFOF.") (Dkts. 84, 86.) This Court, through its local rules, instructed Jennings to file a reproduction of each numbered paragraph in the moving party's statement of facts followed by a response to each paragraph in addition to a brief in opposition to the motion for summary judgment. Civil L.R. 56 (2)(B)(i). However, Jennings did not dispute the facts in the Joint PFOF nor Dr. South's PFOF. As such, all facts in the Joint PFOF and Dr. South's PFOF are deemed admitted. *See* Civil L.R. 56(4).

Rather than disputing any facts in the Joint PFOF or in Dr. South's PFOF, Jennings filed his own proposed findings of fact ("Jennings' PFOF".) However, Jennings' PFOF failed to comply

3

with this Court's local rules and failed to demonstrate that any material disputes of fact exist. Pursuant to this Court's local rules, an opposing party's proposed findings of fact must include "references to the affidavits, declarations, parts of the record, and other supporting materials relied upon to support the facts described in the paragraph" and the opposing party must contemporaneously file "any opposing affidavits, declarations, and other materials." Civil L. R. 56(2)(B)(ii) – (C). At the outset, Jennings did not file any opposing affidavits or declarations to support the assertions in his PFOF. (*See* Dkt. 88.) Rather, he filed seven exhibits attached to his PFOF. (*See id.*) Yet, none of this cited "evidence" is in proper evidentiary form because Jennings did not show that the exhibits attached to his PFOF were true and correct.

Further, and critically, Jennings' PFOF numbers one (1) through five (5) and eleven (11) through sixteen (16) are immaterial to Dr. South's motion because they have no bearing on the knowledge that Dr. South had when she provided care to or made treatment decisions for Jennings. They also fail to show that Jennings suffered any harm due to any alleged delay in care.

Finally, Jennings' PFOF numbers six (6) through ten (10) are not supported by the cited evidence and fail to comply with this Court's Civil Local Rules. For example, Jennings' PFOF numbers six (6) and seven (7) cite vaguely to his "Exhibit 6" in support. (*See id.*) Exhibit 6 is hundreds of pages long. As such, rather than identifying facts through the proper methodology of citing to "specific references" in the summary judgment record to support a single fact as required by this Court's local rules, Jennings simply filed hundreds of pages of documents and impermissibly asked this Court to search the record to find disputed facts. *See* Civil L.R. 56. Even so, these facts are, again, immaterial. Nothing in Jennings' proposed facts supports an assertion that Dr. South actually saw and reviewed the contents of the hundreds of pages of documents enclosed in Jennings' Exhibit 6. Further, and critically, there are no facts in proper form before

4

this Court to describe the contents of the hundreds of pages of documents attached as Jennings'

Exhibit 6.

**II.     Dr. South Is Entitled To Summary Judgment Dismissing Jennings' Eighth Amendment Claim Against Her.**

As set forth in Dr. South's opening brief and the joint undisputed proposed findings of fact,

together with Dr. South's proposed disputed findings of fact, there are three independent grounds

for this Court to dismiss Jennings' Eighth Amendment claim against Dr. South. First, Dr. South

did not make any treatment decisions for Jennings with substantial knowledge that Jennings was

in a risk of harm. Next, Dr. South did not delay Jennings' care. Finally, Dr. South did not cause

Jennings any harm. As described below, Jennings failed to demonstrate that any issue of fact or

law exists, and Dr. South is entitled to judgment dismissing Jennings' Eighth Amendment claim.

**A.     *Jennings failed to introduce any material disputes of fact to support his burden of proof to demonstrate that Dr. South made treatment decisions without professional judgment and with substantial knowledge of harm to Jennings*.**

Eighth Amendment deliberate indifference to serious medical need standards requires a

subjective inquiry into the defendant's knowledge at the time when the defendant made treatment

decisions, relying on evidence "that an official *actually* knew of and disregarded a substantial

harm." *Petties v. Carter,* 836 F.3d 772, 728 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S.

825, 837, 114 S. Ct. 1970, 128 L.Ed. 2d 811 (1994)) (emphasis in original).  In Dr. South's opening

brief, she demonstrated that because she was an independent contractor with the Department of

Corrections ("DOC"), pursuant to Wisconsin Department of Adult Institutions Policy, she:  (1)

could not order treatment for Jennings; (2) did not receive Jennings' offsite visit reports to

determine whether specialists' recommendations should be followed; (3) did not have authority to

approve or deny patient treatment;  (4) did not have authority to initiate Class III prior-approval

for Jennings' treatment, (5) did not schedule Jennings' offsite visits;  (5) did not collect, review,

5

and respond to Jennings' HSRs unless a DOC staff member consulted with her, and even in that event, she did not determine the response; and (6) did not schedule Jennings for care appointments with herself. (Defendant Bethany South's Disputed Proposed Findings of Fact ("PFOF"), Dkt. 84 ¶¶ 5, 7 – 8.) Jennings did not dispute these facts.

Moreover, Dr. South demonstrated that when making the scant actions that she made related to Jennings' care, which included: (1) not ordering glasses for Jennings after a March 11, 2021, eye exam; and (2) cancelling the order for Jennings' corneal crosslinking surgery on or around May 10, 2022, she acted with professional judgment and without knowledge that Jennings was in a substantial risk of harm. Specifically, Dr. South demonstrated that when she did not order glasses, she acted with the knowledge that Jennings would be seeing an offsite provider for testing and his prescription could change at that appointment, that Jennings may have had keratoconus and glasses are not very effective for correcting the blurred vision of keratoconus. (*Id.,* ¶ 2.) Dr. South also demonstrated that when she cancelled the order for Jennings' corneal crosslinking, she acted without *actual* knowledge regarding the recommendations in Jennings' offsite visit reports and without *actual* knowledge regarding the details of his offsite medical care. (*Id.,* ¶ 3-4.) She acted without *actual* knowledge that Dr. Sukowaty had previously approved Jennings' corneal crosslinking procedure. (*Id.,* ¶ 6.) She acted without *actual* knowledge that the corneal crosslinking procedure was anything more than an order waiting for DOC approval. (*Id.,* ¶¶6-7.) She acted with the knowledge that the DOC had denied a prior keratoconus patient's Class III board application for corneal crosslinking as a non-urgent, elective, and non-covered procedure that was not medically necessary, and with the knowledge that this patient did not suffer any further issues. (*Id.,* ¶¶ 9.)

In his response, Jennings did not dispute these facts. Rather, he took an ineffective and meritless approach by introducing immaterial proposed facts that have no bearing on Dr. South's *actual* knowledge at the time of the underlying events. For example, in his brief, Jennings cited to his Proposed Finding of Fact ("PFOF") ¶ 4 to assert that "Dr. South testified that if a person does not treat keratoconus, they would be permanently unable to see." However, Jennings' brief does not accurately cite to his own PFOF ¶ 4, which states that: "Dr. South testified in depositions that untreated keratoconus would lead to permanent vision loss." This assertion is immaterial because Dr. South's undisputed PFOF supports that at the time underlying Jennings' claims, she understood the "permanent vision loss" associated with keratoconus meant "blurred vision, which can be addressed with contact lens use" and did not include no-light-perception vision loss. (Dkt. 84, ¶ 9.) In sum, Dr. South acted with *actual* knowledge that, even if Jennings' keratoconus condition was untreated, he would be able to use contact lenses to address blurred vision.

Jennings also asserted in his PFOF ¶ 3 that Dr. South "testified in depositions that keratoconus was degenerative and will get worse over time." However, Dr. South's undisputed PFOF supports that at the time underlying Jennings' claims, she understood that patients can live with keratoconus without having a corneal crosslinking procedure or a corneal transplant for years and even decades without experiencing any significant worsening of the disease and that some patients do not ever require corneal crosslinking or a corneal transplant at all. (*Id.,* ¶ 9.) Indeed, Dr. South's undisputed PFOF further demonstrated that in Dr. South's experience with the DOC, the DOC denied a prior keratoconus patient's recommended corneal crosslinking procedure. (*Id.*) In that instance, the keratoconus patient did not suffer any further issues despite not receiving the recommended corneal crosslinking procedure. (*Id.*) As such, Jennings pointed to an ineffective and immaterial fact.

Again, Jennings cited to alleged disputed findings of fact in his brief that are not provided in his PFOF. In his brief, Jennings stated that "other Defendants have testified that this procedure was covered because it was a Class II, non-urgent procedure, and not a Class III, elective procedure." Jennings did not cite any PFOF paragraphs or anything in the record to support this assertion in his brief. Even so, this alleged testimony has no bearing on Dr. South's *actual* knowledge at the time of the underlying events. Jennings did not dispute that on or around May 10, 2022, Dr. South believed that the DOC classified corneal crosslinking as a Class II procedure, for which she was not authorized to initiate a Class III review. (Dkt. 84, ¶¶ 8-9.)

Finally, Jennings introduced his immaterial PFOF ¶ 11 to argue that Health Services Requests ("HRS") "go directly to the DOC optometrist's inbox" to support an argument that Dr. South knew of Jennings' deteriorating condition and the recommendations of his off-site providers at the time of her actions. However, this fact is based solely on Defendant Moore's deposition testimony that generally, HSRs regarding eye care "go directly to the DOC optometrist's inbox". This testimony does not demonstrate that Dr. South in fact received, reviewed, understood, and ignored the contents of Jennings' HSRs. In other words, this fact has no bearing on Dr. South's *actual* knowledge at relevant times. Indeed, nothing in the record supports such a suggestion. None of the HSRs are signed by Dr. South. Rather, they are signed by DOC staff. Further, no facts regarding the actual contents of the HSRs are in the summary judgment record. Again, Jennings did not dispute that Dr. South had not reviewed Jennings' off-site records prior to this litigation, other than a brief review and that no DOC staff members consulted with Dr. South regarding Jennings' offsite recommendations. (Dkt. 84, ¶¶ 3, 7.) In other words, Jennings failed to introduce any facts to demonstrate that Dr. South *actually* knew about his off-site providers' recommendations and the status of his condition on May 10, 2022.

Jennings then relied on his immaterial proposed facts to support a cursory argument based on *Petties v. Carter* that the summary judgment record in this case provides "clues" that can evidence deliberate indifference. 836 F. 3d 722, 731 (7th Cir. 2006). He described that these "clues" include that Dr. South knew that keratoconus was a degenerative condition and that Jennings complained of "disabling vision loss and severe headaches." For the reasons above, these alleged "disputed facts" do not give rise to any inference under *Petties* that Dr. South acted with deliberate indifference. As described above, Jennings' PFOF ¶ 3 does not dispute that at all relevant times, Dr. South understood that that patients can live with keratoconus without having a corneal crosslinking procedure or a corneal transplant for years and even decades without experiencing any significant worsening of the disease and that some patients do not ever require corneal crosslinking or a corneal transplant at all . (Dkt. 84*., ¶ 7-17.) Further, Jennings' PFOF ¶ 6 does not support his argument that at relevant times, Dr. South knew that Jennings complained of "disabling vision loss and severe headaches." At the outset, Jennings' PFOF ¶ 6 was not properly put into evidence by providing a specific reference to the summary judgment record as required by this Court's Local Civil Rule 56. Rather, Jennings' PFOF ¶ 6 cites to hundreds of pages of documents that were not previously in the record and that are not authenticated through a declaration. Even so, as described above, nothing in the record demonstrates that Dr. South knew details about Jennings' off-site treatment. (Dkt. 84, ¶¶ 3, 7.) Again, Jennings did not dispute that at relevant times, Dr. South did not have *actual* knowledge of the status of his keratoconus and his off-site providers' recommendations. Jennings did not dispute that Dr. South did not review Jennings' off-site records in detail and that no DOC staff consulted with Dr. South regarding Jennings' offisite providers' recommendations. (*Id.*)

In sum, Jennings did not demonstrate that any disputes of fact exist regarding what Dr. South *actually* knew at the time of the treatment decisions that she made in the facts underlying Jennings' claims against her. Dr. South is entitled to judgment dismissing Jennings' Eighth Amendment claim against her on these grounds.

B.   *Jennings failed to introduce any material disputes of fact to support his burden of proof to demonstrate that Dr. South caused a delay in Jennings' care.*

Further, and independently, Jennings' response did not provide any material facts to dispute that Dr. South did not cause a delay in his care. To demonstrate an Eighth Amendment claim regarding delays in medical care, a plaintiff must present verifying medical evidence that the delay, and not the underlying conditions, caused some harm. *Walker, F v. Wexford Health Sources, Inc.,* 940 F.3d 954, 964 (7th Cir. 2019). In her motion, Dr. South demonstrated that no facts in the summary judgment record carried Jennings' burden to demonstrate that Dr. South caused a delay in his care. Specifically, in the joint undisputed proposed finding of fact filed with her motion, Dr. South showed that on or around April 8, 2022, Defendant Charles Dombeck ("APNP Dombeck") ordered a consult appointment for Jennings' corneal crosslinking procedure. Defendant Haley Bassuener ("LPN Bassuener") made contact with Valley Eye associates, the secure facility that could provide Jennings' corneal crosslinking procedure, on or around April 28, 2022, and that Valley Eye informed her that its earliest opening was in November of 2022. LPN Bassuener scheduled Jennings' appointment for November of 2022 but requested to be put on a call back list in the event a sooner date was to open up. Then, on May 10, 2022, Dr. South saw an order for Jennings' corneal crosslinking and cancelled the order for the reasons discussed above. However, Jennings' corneal crosslinking was reinstated within approximately seven (7) days after Dr. South cancelled the order for his corneal crosslinking on May 10, 2022. Then, Valley Eye informed the DOC that Jennings' appointment could be moved up to August 2022. However, the

10

DOC cancelled that appointment for security reasons after Jennings confirmed that he knew when the off-site visit was scheduled. The DOC then rescheduled crosslinking procedure for October 2022.

These facts are undisputed. These facts do not support any conclusion that Dr. South caused a delay in Jennings' care. Indeed, the only action that Dr. South took did not delay his care. His appointment actually took place earlier than originally scheduled after Dr. South's action. As such, Jennings conceded that his Eighth Amendment claim against Dr. South fails for these grounds.

   C.   *Jennings failed to introduce any material disputes of fact to support his burden of proof to demonstrate that any alleged delay in care caused him harm.*

Finally, and again independently, to make an Eighth Amendment claim against Dr. South, Jennings must show that she delayed his care and that "the delay exacerbated the injury or unnecessarily prolonged [his] pain." *Arnett v. Webster,* 658 F.3d 742, 753 (7th Cir. 2011) (citing *McGowan v. Hulick,* 612 F.3d 636, 640 (7th Cir. 2010)). In her motion, Dr. South demonstrated that no facts in the summary judgment record carried Jennings' burden to demonstrate that a delay in care exacerbated his injury.

Jennings' response is entirely inadequate. Rather than introducing any material disputes of fact supported by citations to admissible evidence in the record, Jennings argues that his treating providers "can testify" about alleged harm resulting from alleged delays in care and breaches in the standard of care. However, summary judgment is the "put up or shut up" moment in a lawsuit. *Johnson,* 325 F. 3d at 901 (citation omitted). If Jennings had admissible evidence to dispute Defendants' facts, he needed to introduce those facts into the record in opposition to Dr. South's summary judgment motion. He did not do so. Jennings' Eighth Amendment claim against Dr. South must be dismissed on summary judgment on these grounds alone.

11

**III.    Dr. South Is Entitled To Summary Judgment Dismissing Jennings' Medical Malpractice Claim Against Her.**

As set forth in Dr. South's opening brief and the joint undisputed proposed findings of fact, together with Dr. South's proposed disputed findings of fact, there are two independent grounds for this Court to dismiss Jennings' medical malpractice claim against Dr. South on summary judgment. First, Dr. South demonstrated that Jennings could not demonstrate that she breached a duty of care. *Paul v. Skemp,* 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860 (citation omitted). Next, Dr. South demonstrated that she did not cause harm to Jennings. *Id.*

As described below, Jennings failed to demonstrate that any issue of fact or law exist, and Dr. South is entitled to judgment dismissing Jennings' medical malpractice claim against her.

> ### A.    *Jennings failed to introduce any material disputes of fact to support his burden of proof dispute to demonstrate that Dr. South breached a duty of care.*

In his response to Dr. South's argument that Jennings cannot demonstrate that she breached a duty of care, Jennings again relied on his immaterial proposed facts to argue that Dr. South knew that corneal crosslinking was the standard of care and knew that Jennings' vision was deteriorating. As demonstrated above, these facts are not sufficient to demonstrate a material dispute of fact regarding what Dr. South *actually* knew at relevant times. Moreover, these facts are certainly not sufficient to demonstrate any material dispute of fact that Dr. South breached a standard of care. At the outset, Jennings admitted that Dr. South, an optometrist, could not treat his keratoconus. It is unclear how Dr. South could have breached a duty in treating Jennings' keratoconus when he agrees that such treatment fell beyond her professional scope. Further, in his response, Jennings does not dispute that the only care at issue that fell within Dr. South's scope included the March 11, 2021, and May 10, 2022, examination appointments with Jennings, and that nothing in the record establishes that Dr. South breached any duty of care during those appointments.

Rather, Jennings dedicated the bulk argument in opposition to an argument based on *Gil v. Reed* that he does not require an expert witness to opine about the standard of care. 381 F. 3d 649, 659 (7th Cir. 2004). This argument is ineffective because *Gil* stands for the proposition that treating providers can be sufficient to establish the standard of care. This may be true, but it cannot be disputed that Jennings failed to offer any such testimony in response to Dr. South's summary judgment motion. Rather, Jennings asserted he "can show" certain disputed facts through the testimony of treating physicians, without providing such testimony. This illusory reference to hypothetical future testimony is insufficient to survive summary judgment. *See e.g., Johnson,* 325 F. 3d at 901. (citation omitted).

B.     *Jennings failed to introduce any material disputes of fact to support his burden of proof to demonstrate that Dr. South caused him to suffer an injury.*

Finally, and again independently, Jennings cannot demonstrate that Dr. South caused him to suffer any injury. In her initial brief, Dr. South demonstrated that no facts in the summary judgment record carried Jennings' burdens to demonstrate that Dr. South caused Jennings to suffer any harm. In response, Plaintiff argued, without citing to any admissible facts in the record, that "[s]sufficient testimony exists to infer that delaying corneal cross-linking reduces the likelihood it will be effective." He then argued that this alone is sufficient to demonstrate that unspecified delays caused by Dr. South, and again, there are no such delays in the record, were the cause-in-fact of Jennings' injuries.

Jennings' argument relies on leaps and bounds in impermissible inferences. First, he introduced no material facts to dispute that Dr. South did not cause any delay in his care. Second, he identified no facts regarding what, if any, harm was caused by such delays. There is no evidence in the summary judgment record that an alleged delay in Jennings' corneal crosslinking caused the procedure to be ineffective. Jennings testified that it was his belief that he needed a corneal

transplant procedure because he did not have the corneal crosslinking procedure until October 2022. Jennings has no medical training. Jennings further testified that his provider did not tell him that he needed a corneal transplant due to when he had the corneal crosslinking procedure. Jennings cannot survive summary judgment by referring to illusory conclusions that are not supported by any citations to admissible evidence.

Finally, Jennings argued, again without any citations to admissible facts on the record, that Dr. South caused him harm by failing to prescribe him with contact lenses. Again, there is nothing in the record that supports Jennings' assertion that Dr. South failed to prescribe him contact lenses. Rather, there are numerous undisputed facts to the contrary because Dr. South was not capable of prescribing him with contact lenses. First, Dr. South is an optometrist. As an optometrist working as an independent contractor with the DOC, Dr. South performed primary eye care including basic eye exams using the equipment available to her at the correctional facilities. (Dkt. 80, ¶ 7.) Moreover, Jennings testified that he sees providers at UW, not DOC optometrists, for his contact lens prescription. Indeed, his Off-Site Visit Reports from appointments at UW reference recommendations for Jennings to return to UW for contact lenses. Dr. South, as an optometrist providing primary eye care within the DOC's facilities, did not provide contact lens prescriptions to Jennings. As such, Jennings' assertion that Dr. South caused him harm by failing to prescribe him with contact lenses is not grounded in reality.

Simply put, Jennings cannot hallucinate disputed facts into existence to survive summary judgment. The record demonstrates that he cannot carry his burden of proof to show that Dr. South caused him harm, and his medical malpractice claim should be dismissed on summary judgment.

## **CONCLUSION**

On the basis of the argument and authority set forth above and the pleadings of record in this matter, including the declarations in support of Defendant Bethany South's Motion for Summary Judgment, the Court should grant Defendant Bethany South's Motion for Summary Judgment and dismiss, with prejudice and on the merits, Plaintiff Damonta Jennings' Second Amended Complaint, and award Defendant Bethany South costs.

Dated this 17th day of November, 2025.

AXLEY LLP

*Electronically signed by Cecilia A. Heberling*
Cecilia A. Heberling, SBN:  1118904
Attorneys for Defendant Bethany South
Suite 200, 2 East Mifflin Street (53703)
Post Office Box 1767
Madison, WI  53701-1767
Telephone:  608.257.5661
Facsimile:  608.257.5444
Email: cheberling@axley.com