DAMONTA JENNINGS,

          Plaintiff,

  v.

CHARLES DOMBECK, et al.,                    Case No. 22-cv-01205

          Defendants.

## DEFENDANT BETHANY SOUTH'S RESPONSE TO
## PLAINTIFF'S DISPUTED PROPOSED FINDINGS OF FACT IN OPPOSITION TO
## DEFENDANT BETHANY SOUTH'S MOTION FOR SUMMARY JUDGMENT

NOW COMES the Defendant, Bethany South ("Dr. South"), by her attorneys, Axley LLP, by Attorney Cecilia A. Heberling, and submits the following Response to Plaintiff's Disputed Proposed Findings of Fact in Opposition to Defendant Bethany South's Motion for Summary Judgment.

1.     Defendant Bethany South ("Dr. South") testified in depositions that keratoconus is a form of corneal ectasia. (Ex. 1, 15: 2-9.)

**RESPONSE: Not disputed; however, this proposed fact is immaterial as to the issues of Dr. South's alleged deliberate indifference and medical malpractice.**

2.     Dr. South testified in depositions that the standard of care for a patient with keratoconus is corneal cross-linking. (Ex. 1, 41: 23-25; 42: 8-10.)

**RESPONSE: Not disputed; however, Exhibit 1 at p. 42: 8 -10 does not support the proposed fact. Moreover, this proposed fact is immaterial as to the issues of Dr. South's alleged deliberate indifference and medical malpractice. Dr. South is an optometrist. (Dtk. 74 p. 5 [9: 2-3]; Dkt. 72, p. 5 [5: 17], Dkt. 80, ¶3.) Dr. South is not a**

surgeon. **(Dkt. 71, p. 12 [35: 19].) At all times relevant to this action, Dr. South was an independent contractor working within the State of Wisconsin Correctional Facilities on behalf of Richter Professional Services, with whom the Wisconsin Department of Corrections ("DOC") had a contract, pursuant to a March 22, 2016, Independent Contractor Agreement between Dr. South and Richter Professional Services (hereinafter the "Independent Contractor Agreement"). (Dkt. 80, ¶ 4 ; Dkt 74, p. 5 [9: 13].) As an independent contractor with the DOC, Dr. South performed primary eye care including basic eye exams using the equipment available to her at the correctional institutions. (Dkt. 80, ¶ 7.) In Wisconsin, corneal crosslinking is performed by surgeons. (Dkt. 72, p. 12 [35: 24-25], p. 13 [36: 1].) Because she is not a surgeon, Dr. South does not participate in evaluations for corneal crosslinking nor corneal crosslinking surgeries themselves. (*Id.,* p. 12 [35: 15-23].) Further, in Dr. South's experience, patients can live with keratoconus without having a corneal crosslinking procedure or a corneal transplant for years and even decades without experiencing any significant worsening of the disease. (Dkt. 80, ¶¶ 18-19, 22-23; Dkt. 72, p. 21 [68: 18-19].) Some patients do not ever require corneal crosslinking or a corneal transplant at all. *Id.***

3.      Dr. South testified in depositions that keratoconus was typically degenerative and that degenerative means the condition will get worse over time. (Ex. 1, 16: 3-7; 18: 4-7.)

**RESPONSE:   Not disputed; however, this proposed fact is immaterial as to the issues of Dr. South's alleged deliberate indifference and medical malpractice. In Dr. South's experience, patients can live with keratoconus without having a corneal crosslinking procedure or a corneal transplant for years and even decades without experiencing any significant worsening of the disease. (Dkt. 80, ¶¶ 18-19, 22-23; Dkt. 72, p. 21 [68:**

2

**18-19].) Some patients do not ever require corneal crosslinking or a corneal transplant at all.** *Id.*

4.      Dr. South testified in depositions that untreated keratoconus would lead to permanent vision loss. (Ex. 1, 18: 1-7.)

**RESPONSE:  Not disputed; however, this proposed fact is immaterial as to the issues of Dr. South's alleged deliberate indifference and medical malpractice. A patient with keratoconus that never receives treatment would not go blind and would not have no-light perception vision loss. The vision loss would be blurred vision, which can be addressed with contact lens use. (Dkt. 80,  ¶¶ 1819, 22-23; (Dkt. 72, p. 21 [68: 18-19].)**

5.      Dr. South testified that the "very worst-case scenario" for someone with keratoconus is a corneal transplant. (Ex. 1, 17:13-17.)

**RESPONSE:  Not disputed; however, this proposed fact is immaterial as to the issues of Dr. South's alleged deliberate indifference and medical malpractice.  In Dr. South's experience, patients can live with keratoconus without having a corneal crosslinking procedure or a corneal transplant for years and even decades without experiencing any significant worsening of the disease. (Dkt. 80, ¶¶ 1819, 22-23; Dkt. 72, p. 21 [68: 18-19].) Some patients do not ever require corneal crosslinking or a corneal transplant at all.** *Id.* **Further, during the events underlying Jennings' claims, Dr. South had not studied Jennings' off-site medical records and no DOC staff member consulted with her regarding Jennings' off-site recommendations. (Dkt. 80, ¶¶ 11, 11.)**

6.      Jennings submitted Health Services Requests ("HSRs") concerning his eye condition, lack of corrective lenses, and/or the recommended treatment on the following dates: February 12, 2021; March 12, 2021; March 14, 2021; April 21, 2021; June 5, 2021; July 27, 2021; December 8, 2021; February 25, 2022; March 1, 2022; March 2, 2022; April 3, 2022; April 5,

2022; April 24, 2022; May 11, 2022; May 31, 2022; June 9, 2022; June 17, 2022; July 14, 2022; July 16, 2022; August 16, 2022; August 19, 2022; and August 24, 2022. (Ex. 6.)

**RESPONSE: Disputed. The proposed finding of fact is unsupported by evidentiary support and the Court should disregard Plaintiffs' proposed fact. Fed. R. Civ. Pro. 56(e). Plaintiff did not introduce Exhibit 6 through any declaration and did not attest that the documents are true and correct. Further, rather than citing to "specific references" to the cited material as required by this Court's Civil Local Rule (56), this proposed fact impermissibly requires the Court to search through hundreds of pages of records to find support for the proposed fact. Further, this fact is immaterial as to the issues of Dr. South's alleged deliberate indifference and medical malpractice. The documents attached in Exhibit 6 are signed by DOC staff members and are not signed by Dr. South. The Health Service Requests are not signed by Defendant South, but rather are signed by DOC staff members, consistent with the Waupun Correctional Institution Rules & Information Handbook, which states that Health Services Unit staff review the requests and that a DOC nurse schedules appointments if necessary. As such, there is no evidence in the record that at relevant times, Dr. South reviewed these documents.**

7. Jennings submitted information requests to the Health Services Unit requesting information from optometrist on February 23, 2022; March 1, 2022; April 3, 2022; May 2, 2022; July 16, 2022; and August 19, 2022. (Ex. 6.)

**RESPONSE: Disputed. The proposed finding of fact is unsupported by evidentiary support, and the Court should disregard Plaintiffs' proposed fact. Fed. R. Civ. Pro. 56(e). Plaintiff did not introduce Exhibit 6 through any declaration and did not attest that the documents are true and correct. Further, rather than citing to "specific**

**references" to the cited material as required by this Court's Civil Local Rule (56), this proposed fact impermissibly requires the Court to search through hundreds of pages of records to find support for the proposed fact. Further, this fact is immaterial as to the issues of Dr. South's alleged deliberate indifference and medical malpractice. The documents attached in Exhibit 6 are signed by DOC staff members and are not signed by Dr. South. As such, there is no evidence in the record that at relevant times, Dr. South reviewed these documents.**

8.      An internal investigation of Jennings' complaint was conducted and a report was written on September 8, 2022. (Ex. 4.)

**RESPONSE: Disputed. This proposed fact is not compliant with this Court's local rules because it fails to set forth a paragraph containing a "single material fact." Civ. L. R. 56. The proposed finding of fact is unsupported by evidentiary support, and the Court should disregard Plaintiffs' proposed fact. Fed. R. Civ. Pro. 56(e). Plaintiff did not introduce Exhibit 4 through any declaration and did not attest that the documents are true and correct. Further, rather than citing to "specific references" to the cited material as required by this Court's Civil Local Rule (56), this proposed fact impermissibly requires the Court to search the records to find support for the proposed fact.**

9.      The September 8, 2022, report indicates that on May 9, 2022, Dr. south canceled the corneal cross-linking order and that she reordered the procedure on May 16, 2022. The report also indicates that Defendant Mary Moore received the treatment recommendations from off-site providers and did not order the treatment. (Ex. 4.)

**RESPONSE: Disputed. This proposed fact is not compliant with this Court's local rules because it fails to set forth a paragraph containing a "single material fact." Civ.**

**L. R. 56. Additionally**, **the proposed finding of fact is unsupported by evidentiary support, and the Court should disregard Plaintiffs' proposed fact. Fed. R. Civ. Pro. 56(e). Further, rather than citing to "specific references" to the cited material as required by this Court's Civil Local Rule (56), this proposed fact impermissibly requires the Court to search through hundreds of pages of records to find support for the proposed fact.**

10. Defendant Laura Sukowaty ("Dr. Sukowaty") testified in depositions that Jennings' corneal cross-linking would have been a Class II procedure, that Class II procedures are for urgent care, Cass III procedures are elective, and that prior approval is not needed for Class II procedures. (Ex. 2, 15:3-15; 10: 1-7.)

**RESPONSE: Disputed. This proposed fact is not compliant with this Court's local rules because it fails to set forth a paragraph containing a "single material fact." Civ. L. R. 56. Further, this proposed fact is immaterial as to the issue of Dr. South's alleged deliberate indifference and medical malpractice. At the time of the events underlying Jennings' claims, Dr. South believed that the DOC understood corneal crosslinking to be a non-covered care service that was not medically necessary because Class III Committee previously denied a patient's corneal crosslinking procedure in the past, which to her knowledge did not cause the patient to suffer any further issues. (Dkt. 80, ¶¶ 18-19, 22-23; (Dkt. 72, p. 21 [68: 18-19].)**

11. Defendant Mary Moore testified that HSRs concerning eye issues go "right to the optometrist's mailbox and then they handle that." (Ex. 3, 14:10-15.)

**RESPONSE: For purposes of summary judgment only, Dr. South does not dispute; however, this proposed fact as immaterial as to the issues of Dr. South's alleged deliberate indifference and medical malpractice. Defendant Moore did not testify**

**that she has personal knowledge that Dr. South received and reviewed Jennings'**
**Health Services Requests, but rather are signed by various DOC staff. As such, this**
**fact does not support any assertion that Dr. South in fact received and reviewed**
**Jennings' Health Services Requests. The Health Service Requests are not signed by**
**Defendant South, but rather are signed by DOC staff members, consistent with the**
**Waupun Correctional Institution Rules & Information Handbook, which states that**
**Health Services Unit staff review the requests and that a DOC nurse schedules**
**appointments if necessary. Further, Defendant Moore clarified in her deposition**
**testimony that she has no recollection of providing Jennings' off-site recommendation**
**forms to Dr. South. (Dkt. 76, p. 16 [48 – 16 – 20].) Moreover, in violation of this**
**Court's Local Rules, there are no facts in proper proposed fact form regarding the**
**contents of Jennings' Health Services Requests. Rather, Jennings' cited to Exhibit 6,**
**containing hundreds of pages of medical records, and impermissibly asked this Court**
**to search the record to find disputed facts.**

12. Treating physician Dr. Kevin Kurt wrote that the purpose of corneal cross-linking is to prevent the progression of the disease and "is not intended to reverse the disease or improve visual acuity." (Ex. 5.)

> **RESPONSE: Not disputed; however, this proposed fact is immaterial as to the issues**
> **of Dr. South's alleged deliberate indifference and medical malpractice. Dr. Kevin**
> **Kurt's declaration does not attest to any facts that Jennings' care was delayed nor**
> **that any alleged delay in Jennings' care caused any harm or injury to Jennings. (*See***
> **Dkt. 81-19.)**

13.     Defendant Laura Sukowaty testified in depositions that the hope for corneal cross-linking is that it will stop or slow down significantly the progression of keratoconus, but that it does not always do that. (Ex. 2, 24: 18-21.)

**RESPONSE:  Not disputed; however, this proposed fact is immaterial as to the issues of Dr. South's alleged deliberate indifference and medical malpractice. Dr. South is an optometrist. (Dtk. 74 p. 5 [9: 2-3]; Dkt. 72, p. 5 [5: 17], Dkt. 80, ¶3.) Dr. South is not a surgeon. (Dkt. 71, p. 12 [35: 19].) At all times relevant to this action, Dr. South was an independent contractor working within the State of Wisconsin Correctional Facilities on behalf of Richter Professional Services, with whom the DOC had a contract, pursuant to a March 22, 2016, Independent Contractor Agreement between Dr. South and Richter Professional Services (hereinafter the "Independent Contractor Agreement"). (Dkt. 80, ¶ 4 ; Dkt 74, p. 5 [9: 13].) As an independent contractor with the DOC, Dr. South performed primary eye care including basic eye exams using the equipment available to her at the correctional institutions. (Dkt. 80, ¶ 7.) In Wisconsin, corneal crosslinking is performed by surgeons. (Dkt. 72, p. 12 [35: 24-25], p. 13 [36: 1].) Because she is not a surgeon, Dr. South does not participate in evaluations for corneal crosslinking nor corneal crosslinking surgeries themselves. (*Id.,* p. 12 [35: 15-23].) Further, in Dr. South's experience, patients can live with keratoconus without having a corneal crosslinking procedure or a corneal transplant for years and even decades without experiencing any significant worsening of the disease. (Dkt. 80, ¶¶ 1819, 22-23; Dkt. 72, p. 21 [68: 18-19].) Some patients do not ever require corneal crosslinking or a corneal transplant at all. *Id.***

14.     Doctor Kevin Kurt provided a declaration where he stated that corneal cross-linking is the standard of care for keratoconus. (Ex. 7.)

**RESPONSE: Not disputed; however, this proposed fact is immaterial as to the issues of Dr. South's alleged deliberate indifference and medical malpractice. Dr. Kevin Kurt's declaration does not attest to any facts that Jennings' care was delayed nor that any alleged delay in Jennings' care caused any harm or injury to Jennings. (cite) Dr. South is an optometrist. (Dtk. 74 p. 5 [9: 2-3]; Dkt. 72, p. 5 [5: 17], Dkt. 80, ¶3.) Dr. South is not a surgeon. (Dkt. 71, p. 12 [35: 19].) At all times relevant to this action, Dr. South was an independent contractor working within the State of Wisconsin Correctional Facilities on behalf of Richter Professional Services, with whom the DOC had a contract, pursuant to a March 22, 2016, Independent Contractor Agreement between Dr. South and Richter Professional Services (hereinafter the "Independent Contractor Agreement"). (Dkt. 80, ¶ 4; Dkt 74, p. 5 [9: 13].) As an independent contractor with the DOC, Dr. South performed primary eye care including basic eye exams using the equipment available to her at the correctional institutions. (Dkt. 80, ¶ 7.) In Wisconsin, corneal crosslinking is performed by surgeons. (Dkt. 72, p. 12 [35: 24-25], p. 13 [36: 1].) Because she is not a surgeon, Dr. South does not participate in evaluations for corneal crosslinking nor corneal crosslinking surgeries themselves. (*Id.,* p. 12 [35: 15-23].) Further, in Dr. South's experience, patients can live with keratoconus without having a corneal crosslinking procedure or a corneal transplant for years and even decades without experiencing any significant worsening of the disease. (Dkt. 80, ¶¶ 1819, 22-23; Dkt. 72, p. 21 [68: 18-19].) Some patients do not ever require corneal crosslinking or a corneal transplant at all. *Id.***

15.     Dr. Laura Sukowaty is a family medicine doctor. (Ex. 2, 6:14-21.)

**RESPONSE: Not disputed; however, this proposed fact is immaterial to the issues of**

**Dr. South's alleged deliberate indifference and medical malpractice.**

16. Dr. South testified in deposition that if keratoconus progresses, corneal cross-linking will be less effective. (Ex. 1, 36: 12-15.)

**RESPONSE: Not disputed; however, this proposed fact is immaterial as to the issues of Dr. South's alleged deliberate indifference and medical malpractice At the time of the events underlying Jennings' claims, Dr. South believed that the DOC understood corneal crosslinking to be a non-covered care service that was not medically necessary because Class III Committee previously denied a patient's corneal crosslinking procedure in the past, which to her knowledge did not cause the patient to suffer any further issues. (Dkt. 80, ¶¶ 18-19, 22-23; (Dkt. 72, p. 21 [68: 18-19].)**

Dated this 17th day of November, 2025.

AXLEY LLP

*Electronically signed by Cecilia A. Heberling*
Cecilia A. Heberling, SBN: 1118904
Attorneys for Defendant Bethany South
Suite 200, 2 East Mifflin Street (53703)
Post Office Box 1767
Madison, WI 53701-1767
Telephone: 608.257.5661
Facsimile: 608.257.5444
Email: cheberling@axley.com