DAMONTA JENNINGS,

        Plaintiff,

    v.

CHARLES DOMBECK, et al.,                      Case No. 22-cv-01205

        Defendants.

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT BETHANY SOUTH'S RENEWED MOTION FOR SUMMARY JUDGMENT

## INTRODUCTION

Plaintiff, Damonta Jennings ("Jennings"), filed this lawsuit against Defendants Mary Moore, Charles Dombeck, Robert Weinman, Ashley Haseleu, Daniel LaVoie, Laura Sukowaty (collectively "State Defendants"), and Bethany South ("Dr. South") under 42 U.S.C. § 1983. Jennings alleges that Dr. South violated his Eighth Amendment rights by delaying a corneal crosslinking procedure for his keratoconus condition and alleges that Dr. South is liable for medical malpractice under Wisconsin tort law for the same reason. At all times relevant, Dr. South was an independent contractor providing primary optometry care to patients in Wisconsin Department of Corrections ("DOC") custody. The case is now at the summary judgment phase. For the reasons described below, Jennings' response fails to rebut Dr. South's *prima facie* showing that she is entitled to summary judgment dismissing Jennings' claims against her.

In Dr. South's opening brief, she demonstrated that Jennings' Eighth Amendment claim against her fails for three independent reasons. First, Dr. South did not act with deliberate indifference to Jennings' serious medical needs because she did not make any treatment decisions

1

without professional judgment and with actual subjective knowledge that Jennings was in a substantial risk of harm. Indeed, Jennings cannot identify that Dr. South made any treatment decisions whatsoever regarding his corneal crosslinking procedure. Second, Dr. South did not cause a delay in Jennings' care. Finally, Jennings has no verifiable medical evidence that any alleged delay in care caused him to suffer harm.

Additionally, Dr. South demonstrated that Jennings' medical malpractice claim against her fails for two independent reasons. First, Jennings cannot demonstrate that Dr. South breached a duty of care as an optometrist. Second, Jennings cannot demonstrate that any alleged breach caused him any harm. In support of her summary judgment motion, Dr. South provided a joint agreed upon findings of fact supported by the record and her sworn declaration. Dr. South also filed a joint disputed proposed findings of fact proposed by Jennings and disputed by the State Defendants.

In his response, Jennings points to cherry-picked, irrelevant facts to argue that Dr. South was deliberately indifferent to his keratoconus condition. However, Jennings' immaterial factual assertions have no bearing on Dr. South's *actual subjective knowledge* of his offsite providers' recommendations and his condition during the relevant time. Again, in the timeline of events from March 21, 2021, through October 2022, underlying Jennings' claims, Dr. South interacted with him only twice. Further, Jennings entirely failed to respond to Dr. South's argument that she did not cause any delay in his care. Finally, Jennings failed to present any verifiable medical evidence to support a reasonable inference that an alleged delay in his medical care, and not his underlying condition, caused him to suffer harm. For these reasons, Jennings' Eighth Amendment claim fails.

Likewise, Jennings provides an ineffective response to Dr. South's *prima facie* showing that his medical malpractice claim fails. Jennings' irrelevant factual assertions have no bearing on

his admission that Dr. South, as an optometrist, could not and did not treat his keratoconus condition and therefore cannot be liable to him for medical malpractice. He failed to identify facts to support any reasonable inference that Dr. South breached her duty of care and that she caused him harm.

Simply put, Jennings' response only solidified the grounds for Dr. South's summary judgment motion. For numerous independent reasons, as described below, Dr. South is entitled to summary judgment in her favor.

**ARGUMENT**

Under Fed. R. Civ. P. 56, summary judgment should be granted when there are no genuine disputes of material facts, and the moving party is entitled to judgment as a matter of law. A factual dispute is "material" if the dispute could potentially affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Factual disputes over irrelevant or nondispositive issues will not preclude an otherwise proper motion for summary judgment. *Id*. (citation omitted).

If a moving party has met its burden to support its factual assertions with admissible evidence under Fed. R. Civ. P. 56(c), the non-moving party must show that there is more than merely metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986). To create a genuine issue of material fact, a plaintiff must support their disputes of proposed facts with citations to admissible evidence. *See e.g. Anderson*, at 248-49 (citations omitted); Fed. R. Civ. P. 56(c)(1)(A); Civ. L. R. 56(b)(2). Stated more colloquially, "summary judgment 'is the "put up or shut up" moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events.'" *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003) (quoting *Schacht v. Wisconsin Dept. of Corr.,* 175 F.3d 497, 504 (7th Cir. 1999)).

**I.    Dr. South Is Entitled To Summary Judgment Dismissing Jennings' Eighth Amendment Claim Against Her.**

As set forth in Dr. South's opening brief and the joint agreed upon findings of fact, there are three independent grounds for this Court to dismiss Jennings' Eighth Amendment claim against Dr. South. First, Dr. South did not make any treatment decisions for Jennings with substantial knowledge that Jennings was in a risk of harm. Next, Dr. South did not delay Jennings' care. Finally, Jennings cannot demonstrate that an alleged delay in his care, and not his underlying condition, caused him harm. As described below, Jennings failed to demonstrate that any issue of fact or law exists to rebut Dr. South's arguments, and Dr. South is entitled to judgment dismissing Jennings' Eighth Amendment claim.

> **A.    *Jennings failed to introduce any material facts to demonstrate that Dr. South made treatment decisions without professional judgment and with substantial knowledge of harm to Jennings.***

Jennings' opposition ineffectively focuses on cherry-picked factual assertions that, when placed within the context of the nearly one-year and seven-month timeline underlying his claims, have no material bearing on Dr. South's actual substantive knowledge during the underlying factual background. Eighth Amendment deliberate indifference to serious medical need standards requires a subjective inquiry into the defendant's knowledge at the time when the defendant made treatment decisions, relying on evidence "that an official *actually* knew of and disregarded a substantial harm." *Petties v. Carter,* 836 F.3d 772, 728 (7th Cir. 2016) (citing *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L.Ed. 2d 811 (1994)) (emphasis in original). In Dr. South's opening brief, she demonstrated that because she was an independent contractor with the DOC pursuant to Wisconsin Department of Adult Institutions Policy ("DAI"), she did not receive nor review Jennings' offsite visit reports to determine whether specialists' recommendations should be followed. As such, Dr. South demonstrated that at relevant times, she did not have *actual*

subjective knowledge regarding the recommendations in Jennings' offsite visit reports and did not have *actual* subjective knowledge regarding the details of his offsite medical care and keratoconus condition. Even further, Dr. South demonstrated that she made no treatment decisions regarding recommendations made by Jennings' offsite providers.

         i.       <u>Jennings did not introduce any material issues of law or fact to rebut Dr. South's demonstration that she did not have subjective knowledge regarding his keratoconus condition, the recommendations of his offsite providers, nor the scheduling status for his treatment with offsite providers.</u>

In response, Jennings ineffectively cherry-picked irrelevant facts having no bearing on Dr. South's *actual* subjective knowledge to argue that she acted with deliberate indifference. These facts include: (1) Dr. South suspected Jennings had corneal ectasia during his March 11, 2021, basic eye exam appointment with her; (2) Dr. South testified that keratoconus is degenerative; (3) Dr. South testified that if a person does not treat keratoconus, they would be permanently unable to see; (4) Dr. South testified that a corneal transplant would be the "very worst case scenario" for a person with keratoconus; (5) Defendant Mary Moore ("APNP Moore") testified that all HSRs that discuss eye issues go "right to the optometrist's mailbox and then they handle that;" and (6) Dr. South cancelled Jennings' corneal crosslinking procedure on May 10, 2022, but should have instead made an internal request for such treatment. (Dkt. 105, pp. 5, 9 -10.) Jennings' facts fall into two general categories, including Dr. South's general knowledge about keratoconus and Dr. South's knowledge of Jennings' offsite providers' recommendations. When placed in the context of the entire factual background, these facts are irrelevant, inaccurate, and fail to demonstrate any probative evidence regarding Dr. South's actual subjective knowledge during the relevant period.

At the outset, Jennings' facts regarding Dr. South's general knowledge of keratoconus are cherry-picked, incomplete, inaccurate, and irrelevant. First, while Dr. South testified that keratoconus is a degenerative condition, there is no dispute that at relevant times, Dr. South

understood that patients can live with keratoconus without having a corneal crosslinking procedure or a corneal transplant for years and even decades without experiencing any significant worsening of the disease. She further understood that some patients do not ever require corneal crosslinking or a corneal transplant at all. No reasonable jury could infer from this record that Dr. South had actual subjective knowledge that Jennings was in substantial risk of harm. Further, Dr. South did not testify simply that someone with untreated keratoconus would be permanently unable to see. Rather, she testified that someone with keratoconus who does not have a corneal transplant would be "permanently unable to see" in the form of "very blurry vision," which could be improved with contact lenses. She also testified that untreated keratoconus does not lead to blindness or no-light-perception vision loss. Finally, Dr. South did not testify that a corneal transplant is the "worst case scenario" for someone with keratoconus. Rather, when asked at her deposition "what comes next after blurry vision if keratoconus goes untreated," Dr. South stated "[p]otentially a corneal transplant at the very worst-case scenario … I think a corneal transplant would be the end of that." Again, she also testified that in her experience, some keratoconus patients never require any treatment at all.

Likewise, Jennings' facts regarding Dr. South's knowledge about his offsite providers' recommendations are cherry-picked, incomplete, inaccurate, and irrelevant. First, Jennings attempts to infer, from APNP Moore's testimony, that Dr. South in fact received and reviewed every HSR written by Jennings to DOC staff and therefore had knowledge about his offsite providers' recommendations and his "deteriorating condition." (Dkt. 105, 4.) This is demonstratively false, inadmissible evidence. None of the HSRs are signed by Dr. South. Rather, they are signed by DOC staff. Moreover, Dr. South was not the only optometrist working as an independent contractor with the DOC at relevant times, and she worked within numerous DOC

facilities. In sum, nothing in the record supports any inference that Dr. South in fact saw and reviewed each and every HSR submitted by Jennings. Further, no facts regarding the actual contents of the HSRs, much less Jennings' alleged "deteriorating condition," are in the summary judgment record.

Finally, and critically, APNP Moore has no personal knowledge to testify regarding which documents Dr. South did and did not see. APNP Moore testified that, "when _nurses_ do the review of HSR slips, if it's an eye concern, it goes right to the optometrists' mailbox and they handle that." (emphasis added). Pursuant to DAI policy, DOC nurses review and respond to patient HSRs. APNP Moore is not a DOC nurse, and she did not personally handle Jennings' HSRs. As such, APNP Moore cannot offer testimony about what HSRs Dr. South did and did not see, and her testimony is inadmissible to determine what information Dr. South had about Jennings' offsite providers' recommendations and his condition. Dr. South, however, has personal knowledge regarding what she knew about Jennings' offsite providers' recommendations and his condition. Indeed, Dr. South testified that she did not review Jennings' offsite visit reports and recommendations when he returned from offsite visits, that no DOC employees provided the offsite reports to her for review, and that no DOC employees consulted with her about them. Again, Dr. South interacted with Jennings only twice in the relevant time to provide basic eye exams. The only knowledge that Dr. South had about Jennings' offsite providers' recommendations came from seeing an order for corneal crosslinking procedure for Jennings on May 10, 2022. Again, she saw only an order, meaning she believed that the DOC still needed to determine whether the procedure was covered. In her experience, the DOC had determined that corneal crosslinking was not a covered Class III procedure and that decision did not lead to any adverse patient outcome.

In reliance on these irrelevant facts, Jennings propounds that the summary judgment record in this case provides "clues" that can evidence deliberate indifference. *Petties*, 836 F.3d at 731. However, to establish the subjective knowledge component of his deliberate indifference claim, Jennings needed to demonstrate that Dr. South "knew of facts from which [s]he could infer that a substantial risk of serious harm existed, and that [s]he did, in fact, draw that inference." *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 964 (7th Cir. 2019) (citations omitted). For the reasons above, the facts discussed by Jennings do not give rise to any inference under *Petties* that Dr. South acted with deliberate indifference because the facts are immaterial to her actual subjective knowledge.

Finally, Jennings' Hail Mary argument that, despite her lack of substantive knowledge about his condition and treatment, Dr. South should have taken some action to get Jennings' crosslinking procedure scheduled is inadequate. Again, she knew that keratoconus patients could live without treatment, understood that the DOC did not cover corneal crosslinking, and understood that DOC staff oversaw, approved, and scheduled his offsite care. Simply put, Dr. South's role as an independent contractor and her knowledge that the DOC followed its own procedures and policies for patients' access to offsite care without her involvement is not a reason to hold her liable. *See O'Brien v. Indiana Dept. of Corr.,* 495 F.3d 505, 509 (7th Cir. 2007) (dismissing deliberate indifference claim on summary judgment where evidence showed that the defendants' course of action has been followed repeatedly in the past and nothing showed that the defendants had any reason to think it would not be successful for the plaintiff).

    ii.    <u>Jennings did not introduce any material issues of law or fact to rebut Dr. South's demonstration that she did not make any treatment decisions regarding his care.</u>

Moreover, to survive summary judgment, Jennings needed to demonstrate that Dr. South made a *<u>medical decision</u>*, which decision she "knew better than to make." *Id.* (citing *Whiting v.*

*Wexford Health Sources, Inc.,* 839 F.3d 658, 662-63 (7th Cir. 2016)). However, Jennings agrees that Dr. South, as an optometrist, did not and could not treat his keratoconus condition. It is remarkably unclear how Jennings can purport that Dr. South is liable for making a treatment decision that she "knew better than to make," when he admits that she did not and could not treat his condition. *Walker*, 940 F.3d at 964 (citing *Whiting*, 839 F.3d at 662-63). Jennings did not answer this deficiency in his response. Rather, he argued only that Dr. South "cancelled Jennings' corneal cross-linking treatment," while "other Defendants have testified that this procedure was covered because it was a Class II, urgent procedure, and not a Class III, elective procedure." (Dkt. 105, p. 13.) Jennings does not describe how or why these facts support an argument that Dr. South made any treatment decision regarding his care.[1] This Court can disregard Jennings' underdeveloped, perfunctory argument. *S.E.C. v. Wealth Mgmt. LLC*, 628 F.3d 323, 335 n. 8 (7th Cir. 2010) (underdeveloped arguments in district court are waived) (citation omitted).

Regardless, these facts are inaccurate and again, wholly immaterial. Dr. South testified at her deposition and in her sworn declaration that when she "cancelled" Jennings' crosslinking procedure, she saw only an order for a procedure, meaning that she believed the DOC had not yet determined whether the procedure would be approved. Moreover, in her experience, the DOC did not approve corneal crosslinking for a prior patient under the Class III procedure. In that instance, the patient did not suffer any further or progressive issues.

    B.    *Jennings failed to introduce any material disputes of fact to demonstrate any inference that Dr. South caused a delay in his care.*

Further, and independently, Jennings' response did not provide any response, whatsoever, to Dr. South's argument that his Eighth Amendment claim fails because she did not cause a delay

---

[1] Jennings also propounds the puzzling argument that Dr. South made a treatment decision by not prescribing Jennings with scleral contacts. However, Dr. South is an optometrist who could perform only basic eye exams. Jennings received scleral contacts from his providers at UW Health.

in his care. To demonstrate an Eighth Amendment claim arising from an alleged delay in medical care, as here, a "plaintiff must show that the defendant's actions or inactions caused the delay in his treatment." *Walker,* 940 F.3d at 964 (holding that the defendant could not be liable for an Eighth Amendment deliberate indifference claim because "nothing in the record suggests that [the defendant's] action or inaction caused any of the scheduling delays with [the plaintiff's] offsite appointments.") (citing *Pepper v. Village of Oak Park,* 430 F.3d 805, 810 (7th Cir. 2005)). By offering no response to this argument, Jennings conceded that his Eighth Amendment claim against Dr. South fails for this reason alone because he cannot demonstrate that Dr. South delayed his care. *Walsh v. McDevitt,* 654 F. Supp. 3d 744 (C.D. Ill. Feb. 7, 2023) (citations omitted) ("[A] party's failure to respond to an opposing party's argument implies concession.")

The only mention in Jennings' response of Dr. South creating a delay in Jennings' care is a conclusory assertion that Dr. South "stood in the way of [Jennings'] care and perpetuated the delay." (Dkt. 105, p. 13.) Jennings does not even attempt to back up his unfounded assertion with any facts. (*See id.*) To the contrary, Jennings' own response states that his corneal crosslinking procedure was reinstated by DOC staff approximately seven days after Dr. South cancelled the order for the procedure. (*Id.,* p. 6.) What's more, Jennings' crosslinking procedure was rescheduled by DOC staff for August of 2022, when it had originally been scheduled for November of 2022, and was only postponed until October of 2022 due to a security risk because Jennings knew his procedure date.

C.     *Jennings failed to introduce any material disputes of fact to demonstrate any inference that any alleged delay in care caused him harm.*

Finally, and again independently, to make an Eighth Amendment claim against Dr. South, Jennings must show that she delayed his care *and* that "the delay exacerbated the injury or unnecessarily prolonged [his] pain." *Arnett v. Webster,* 658 F.3d 742, 753 (7th Cir. 2011) (citing

10

*McGowan v. Hulick,* 612 F.3d 636, 640 (7th Cir. 2010)). An Eighth Amendment plaintiff alleging deliberate indifference by delaying care must present "verifying medical evidence" that the delay, and not the underlying condition, caused some harm. *Walker,* 940 F.3d at 964 (citing *Jackson v. Pollion*, 733 F.3d 786, 790 (7th Cir. 2013)). In her motion, Dr. South demonstrated that no facts in the summary judgment record carried Jennings' burden to demonstrate that a delay in care exacerbated his injury.

Jennings' response is entirely inadequate. In his two paragraph, perfunctory argument on this issue, Jennings argues that a jury could infer that a delay caused the need for his corneal transplant procedure in his left eye because: (1) Dr. South caused Jennings' injury by not seeing him or ordering him corrective lenses, (2) a jury could infer that corneal crosslinking could obviate the need for a corneal transplant, and (3) at trial, Jennings can have treating a physician testify that his disease progressed over time. Jennings supported his first argument by citing to Plaintiff's disputed proposed fact No. 1, which fact is not supported by any pinpoint citation to "verifiable medical evidence." *Id.* Rather, it cites to HSRs written by Jennings himself, and Jennings admits that he has no medical training. This argument must be ignored.[2]

Next, Jennings supports his second argument by citing to Dr. Kevin Kurt's ("Dr. Kurt") March 28, 2022, Offsite Visit Report, which states only that "corneal crosslinking may be able to prevent need for corneal transplant." Again, this evidence is insufficient. Jennings underwent corneal crosslinking on October 13 or 14, 2022. Despite providing a declaration to Jennings in this lawsuit, Dr. Kurt has not offered any opinion that any alleged delay in Jennings' care, and not his

---

[2] Even further, as described in Dr. South's opening brief and the joint agreed upon findings of fact, she did not control scheduling patient optometry appointments with her, and she did not prescribe Jennings' contact lenses. Jennings treated with UW Health for his contact lenses. As such, Jennings HSRs are not evidence that Dr. South caused any delay in care. Nor are Jennings' HSRs evidence in the record in general, because the disputed proposed fact relied on by Jennings is hearsay, lacks foundation, is compound, vague, and is not supported by the cited, inadmissible evidence.

underlying keratoconus condition, caused him harm. In fact, the March 28, 2022, medical note, predates the alleged "harm," i.e., the April 2024 corneal transplant procedure in Jennings' left eye, by two years. As such, Dr. Kurt's medical note is hearsay and is an incomplete hypothetical when used to support an assertion that an alleged delay in his corneal crosslinking procedure caused the need for a corneal transplant. Even so, medical testimony in the record from Defendant Laura Sukowaty supports that corneal crosslinking is not guaranteed to reverse, stop, or slow down the progression of keratoconus. Dr. Kurt's March 28, 2022, medical note supports this by stating that corneal crosslinking "*may* be able to prevent" corneal transplant (emphasis added). Keratoconus is a degenerative condition. No verifiable medical evidence in the record supports any assertion that the alleged delay in Jennings' corneal crosslinking procedure, rather than the degenerative condition itself, caused his left-eye corneal transplant.

Finally, Jennings' third argument must be ignored. Summary judgment is the "put up or shut up" moment in a lawsuit. *Johnson,* 325 F.3d at 901 (citation omitted). If Jennings had admissible, verifiable medical evidence to rebut Dr. South's motion, he needed to introduce those facts into the record. He did not do so. Again, Jennings' Eighth Amendment claim against Dr. South should be dismissed on summary judgment on these grounds alone.

## II. Dr. South Is Entitled To Summary Judgment Dismissing Jennings' Medical Malpractice Claim Against Her.

As set forth in Dr. South's opening brief, there are two independent grounds for this Court to dismiss Jennings' medical malpractice claim against her on summary judgment. First, Jennings cannot demonstrate that Dr. South breached a duty of care. *Paul v. Skemp,* 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 625 N.W.2d 860 (citation omitted). Next, Dr. South did not cause harm to Jennings. *Id.* As described below, Jennings' response failed to demonstrate that any issue of fact or law

exists, and Dr. South is entitled to judgment dismissing Jennings' medical malpractice claim against her.[3]

    A.    *Jennings failed to introduce any material disputes of fact to demonstrate that Dr. South breached a duty of care.*

In his response to Dr. South's argument that Jennings cannot demonstrate that she breached a duty of care, Jennings again relied on the irrelevant facts that Dr. South testified that corneal crosslinking is the standard of care, suspected Jennings had corneal ectasia, and testified that a corneal transplant is the "worst case scenario" to argue that Dr. South knew that corneal crosslinking was the standard of care and knew that Jennings' vision was deteriorating. As demonstrated above, these facts are not sufficient to demonstrate a material dispute of fact regarding what Dr. South *actually* knew at relevant times. Moreover, these facts are certainly not sufficient to demonstrate any material dispute of fact that Dr. South *breached* a standard of care. At the outset, Jennings admitted that Dr. South, an optometrist, could not treat his keratoconus. It is unclear how Dr. South could have breached a duty of care in treating Jennings' keratoconus when he agrees that such treatment fell beyond her professional scope. Further, in his response, Jennings does not dispute that the only care at issue that fell within Dr. South's scope included the March 11, 2021, and May 10, 2022, examination appointments with Jennings, and that nothing in the record establishes that Dr. South breached any duty of care during those appointments.

Rather, Jennings dedicated the bulk of his argument in opposition to an argument based on *Gil v. Reed* that he does not require an expert witness to opine about the standard of care. 381 F.3d 649, 659 (7th Cir. 2004). This argument is ineffective because *Gil* stands for the proposition that treating providers can be sufficient to establish the standard of care. This may be true, but it cannot

---

[3] In the alternative, this court should relinquish its supplemental jurisdiction over Jennings' state law medical malpractice claim after dismissing Jennings' federal claim on summary judgment.

be disputed that Jennings failed to offer any such testimony in response to Dr. South's summary judgment motion. Rather, Jennings asserted he "can show" certain disputed facts through the testimony of treating physicians, without providing such testimony. This illusory reference to hypothetical future testimony is insufficient to survive summary judgment. *See e.g., Johnson,* 325 F.3d at 901. (citation omitted).

B. *Jennings failed to introduce any material disputes of fact to demonstrate that Dr. South caused him to suffer an injury.*

Finally, and again independently, Jennings cannot demonstrate that Dr. South caused him to suffer any injury. In her opening brief, Dr. South demonstrated that no facts in the summary judgment record carried Jennings' burdens to demonstrate that Dr. South caused Jennings to suffer any harm. In response, Jennings argued, without citing to any admissible facts in the record, that "[s]ufficient testimony exists to infer that delaying corneal cross-linking reduces the likelihood it will be effective." (Dkt. 105, p. 18.) He then argued that this alone is sufficient to demonstrate that unspecified delays caused by Dr. South, and again, there are no such delays in the record, were the cause-in-fact of Jennings' injuries.

Jennings' argument relies on leaps and bounds in impermissible inferences. First, he introduced no facts whatsoever to show that Dr. South delayed his care. Second, he identified no medical evidence regarding what, if any, harm was caused by such delays. Again, as described above, there is no evidence in the summary judgment record that an alleged delay in Jennings' corneal crosslinking caused the procedure to be ineffective.

Finally, Jennings argued, again without any citations to admissible facts on the record, that Dr. South caused him harm by failing to prescribe him with contact lenses. Again, this argument fails because Dr. South is an optometrist. As an optometrist working as an independent contractor with the DOC, Dr. South performed primary eye care including basic eye exams using the

14

equipment available to her at the correctional facilities. Moreover, Jennings testified that he sees providers at UW Health, not DOC optometrists, for his contact lens prescription. Indeed, his Off-Site Visit Reports from appointments at UW Health reference recommendations for Jennings to return to UW Health for contact lenses. Jennings' assertion that Dr. South caused him harm by failing to prescribe him with contact lenses is not grounded in reality.

## **CONCLUSION**

There is simply no evidence in the record to support Jennings' burden of proof on either of his claims against Dr. South. On the basis of the argument and authority set forth above and the pleadings of record in this matter, including the declarations in support of Defendant Bethany South's Renewed Motion for Summary Judgment, the Court should grant Defendant Bethany South's Renewed Motion for Summary Judgment and dismiss, with prejudice and on the merits, Plaintiff Damonta Jennings' Second Amended Complaint, and award Defendant Bethany South costs.

Dated this 16th day of February, 2026.

AXLEY LLP

*Electronically signed by Cecilia A. Heberling*
Cecilia A. Heberling, SBN: 1118904
Attorneys for Defendant Bethany South
Suite 200, 2 East Mifflin Street (53703)
Post Office Box 1767
Madison, WI 53701-1767
Telephone: 608.257.5661
Facsimile: 608.257.5444
Email: cheberling@axley.com