IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

DAMONTA JENNINGS,

      Plaintiff,

    v.                       Case No. 2022CV01205

CHARLES DOMBECK, et al.,

      Defendants.

## REPLY BRIEF IN SUPPORT OF STATE DEFENDANTS' SECOND MOTION FOR SUMMARY JUDGMENT

The State Defendants argued in their principal brief that the Eighth Amendment claims against them fail because (A) Jennings cannot show that any delay in care caused the corneal transplant of which he complains; (B) the State Defendants did not act with deliberate indifference because they provided extensive and appropriate care; (C) the State Defendants lacked the power to control offsite scheduling; and (D) the State Defendants are entitled to qualified immunity. The State Defendants further argued that the state-law claims fail because (A) the Court should relinquish supplemental jurisdiction; (B) Jennings has not named an expert to establish the standard of care for his medical malpractice claim; (C) Jennings cannot show that Moore's care caused any injury; and (D) Jennings did not comply with Wisconsin's notice of claim statute as required for his claims of negligent supervision. Jennings's response materials are unpersuasive.

**I. The Eighth Amendment claims fail as a matter of law.**

**(A)     Jennings cannot show that any delay in care caused the corneal transplant of which he complains.**

The State Defendants argued in their principal brief that Jennings lacks verifying medical evidence that a delay in care caused him harm. (Dkt. 103:7-8.) In particular, they pointed out that Jennings received both a cross-linking procedure and a corneal transplant, which was successful, and that the medical evidence in the record indicated that he would have needed a corneal transplant regardless of the cross-linking.

Jennings's response says nothing about harm but instead focuses on what he says is the standard of care for keratoconus. (Dkt. 106:7-9.) In effect, he argues that keratoconus is a degenerative disease that can worsen if untreated, and he suggests that Drs. Kurt and South opined that cross-linking is the standard of care. This line of argument fails for at least four reasons.

First, Jennings does not cite any evidence to dispute Dr. Sukowaty's testimony that the brief delay in undergoing cross-linking did not lead to a need for a corneal transplant. (Dkt. 101:23.) This alone is dispositive.

Second, the evidence Jennings cites does not relate to the causation of harm. That is, neither Dr. Kurt nor Dr. South opined that Jennings would have avoided a corneal transplant had there been no delay in care; at most, they suggested that keratoconus usually gets worse if left untreated. This suggestion may speak to whether keratoconus is a serious medical need, but it says nothing on causation, which is a separate element of the Eighth Amendment claims. *See, e.g., Knight v.*

*Wiseman*, 590 F.3d 458, 466 (7th Cir. 2009). Moreover, Jennings's keratoconus was not untreated—he received lenses and, ultimately, both cross-linking *and* a corneal transplant. Jennings's cited evidence says nothing on whether a delay in receiving these treatments caused harm. Thus, even accepting his evidence at face value, Jennings offers nothing to show that a delay caused him to need a transplant.

Third, Jennings overstates Dr. South's and Dr. Kurt's evidence. In fact, Dr. South testified that keratoconus progresses differently in each patient and that cross-linking is not always recommended. (Dkt. 72 at 52.) Dr. Kurt, meanwhile, provided a six-paragraph declaration that did not analyze Jennings's specific case or provide any methodology for his opinion. (Dkt. 88-7.)[1] In context, neither physician opined that the defendants violated the standard of care in this case.

Fourth, whether cross-linking was the standard of care for Jennings's condition is not the relevant inquiry. In fact, several of the defendants agreed that cross-linking was appropriate, and Jennings received the procedure. (Joint PFOF at 10-19.) The delay, such as it was, resulted from other factors, as discussed in the next sections.

### (B) The State Defendants did not act with deliberate indifference because they provided extensive and appropriate care.

The State Defendants also argued that they provided extensive treatment to Jennings. (Dkt. 103:9-10.) In response, Jennings contends that he underwent a nineteen-month delay between the first suspicion of keratoconus in March 2021 and

---

[1] Dr. Kurt also stated that the standard of care came into effect when the FDA approved cross-linking. He did not specify when that was. (Dkt. 88-7.)

his cross-linking procedure in October 2022. (Dkt. 106:11.) This delay, he says, obviates all the care he received in the meantime.

Jennings mistakes the timeline. In fact, he admits that he was not diagnosed with keratoconus until September 2021. (Dkt. 101:15; dkt. 106:12.) It is undisputed that Dr. Reddy, who made that diagnosis, did not request approval for a cross-linking procedure or state that the procedure was urgent. (Dkt. 101:17-18.) Dr. Kurt then recommended cross-linking on March 28, 2022, and by April 8, DOC staff had attempted to schedule the procedure. (Dkt. 101:18-19.) The relevant delay, then, was a little over one week, not the nineteen months Jennings claims.

Jennings also contends that because the defendants did not immediately act on his specialists' recommendations, they were necessarily deliberately indifferent. (Dkt. 106:12-13.) He misunderstands the relevant standards. The deliberate indifference analysis requires a court to look at the entire course of care, which was here extensive. (See dkt. 103:9.) Failure to provide a specific treatment, even one recommended by a specialist, does not support a finding deliberate indifference. *See Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019). In any case, Jennings did receive an order for cross-linking within 10 days of Dr. Kurt's recommendation, which is as close to immediate as health care moves, particularly for a slow-developing condition like keratoconus. The defendants therefore did not act with deliberate indifference.

**(C)     The State Defendants lacked the power to control offsite scheduling.**

Regardless of harm or deliberate indifference, the Eighth Amendment claims fail for lack of remedial power. On this point, the State Defendants' disputed findings of fact are dispositive. In particular, it is undisputed that the defendants cannot control offsite scheduling. (Dkt. 101:19.) Jennings contends that they are nonetheless responsible for the delay between September 2021 and April 2022 (dkt. 89:14), but he again does not dispute that there was no request for approval for cross-linking until March 28, 2022. (Dkt. 101:23 n.7.) Jennings concedes that the defendants were not responsible for any delay after that point. (Dkt. 106:15.)[2]

**(D)     The State Defendants are entitled to qualified immunity.**

The State Defendants incorporate the qualified immunity argument from their principal brief. (Dkt. 85:11-13.) In response, Jennings argues that it was clearly established that a delay in treatment can amount to deliberate indifference. (Dkt. 89:15-16.) While the authorities he cites may speak to the deliberate indifference element argued in section I.B. above, they say nothing on harm or on remedial power as argued in I.A. & C. Further, "clearly established law cannot be framed at a 'high level of generality.'" *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019). Jennings's general restatement of the deliberate indifference principles does not clear that bar; he does not, for instance, cite any instance of a delay in keratoconus treatment, or in

---

[2] Jennings develops no argument as to Dr. LaVoie or the HSMs. The Court should dismiss them for the reasons given in the State Defendants' principal brief.

treatment for a slow-developing disease generally. He therefore fails to show that the defendants violated clearly established law.

## II. The state-law claims fail as a matter of law.

**(A)  The Court should relinquish supplemental jurisdiction.**

Jennings concedes this argument by not responding to it.

**(B)  Jennings has not named an expert to establish the standard of care for his medical malpractice claim.**

Jennings argues that he does not need an expert because (1) the treating physicians testified that cross-linking is the standard of care; and (2) he might name an expert later. (Dkt. 89:16-18.) The first argument is largely duplicative of the argument on harm discussed in section I.A. above and fails for the same reasons. Namely, Dr. South testified that cross-linking is *not* always appropriate, and Dr. Kurt did not outline his methodology or analyze Jennings's case specifically. (Dkt. 72 at 52.) As for the second, summary judgment is the put up or shut up moment; the burden is on Jennings to "come forward with specific facts demonstrating that there is a genuine issue for trial." *Bunn v. Fed. Deposit Ins. Corp.*, 908 F.3d 290, 295 (7th Cir. 2018). He cannot meet that burden by promising to produce evidence at some later date—to allow that would be to obviate summary judgment altogether, as a party could always promise future evidence. In short, Jennings has failed to put up.

**(C)  Jennings cannot show that Moore's care caused any injury.**

Jennings's arguments on causation are largely duplicative. To spare repetition, Defendants reemphasize that even under Jennings's strained reading of Dr. South's

and Dr. Kurt's evidence, they speak only to the standard of care, not causation. Jennings thus fails to adduce any evidence on the causation element.

**(D)** **Jennings did not comply with Wisconsin's notice of claim statute as required for his claims of negligent supervision.**

Jennings concedes this argument. (Dkt. 89:20-21.) The Court should therefore dismiss the negligent supervision claims against Weinman and Haseleu.

## Conclusion

For the reasons stated above, the Court should grant summary judgment to the State Defendants and dismiss all claims against them with prejudice.

Dated: February 16, 2026.

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin


s/ Jonathon Davies
JONATHON M. DAVIES
Assistant Attorney General
State Bar #1102663

KATHRYN A. PFEFFERLE
Assistant Attorney General
State Bar #1097651

Attorneys for State Defendants

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 261-8125 (Davies)
(608) 267-2070 (Pfefferle)
(608) 294-2907 (Fax)
Jonathon.Davies@wisdoj.gov
Kathryn.Pfefferle@wisdoj.gov